## SUPREME COURT.

THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, agt. THE NEW YORK AND HARLEM RAILROAD COMPANY, THE EAST RIVER FERRY COMPANY AND OLIVER CHARLICK.

JAMES M. WATERBURY AND THE EAST RIVER FERRY COMPANY agt. THE DRY DOCK AND EAST BROADWAY AND BATTERY RAILROAD COMPANY, AND THE NEW YORK AND HARLEM RAILROAD COMPANY.

By an act of the legislature in 1826, the title to all lands four hundred feet east of low water mark on the shore of the East river was vested in the mayor, aldermen and commonalty of the city of New York.

The Dry Dock Railroad Co. agt. The N. Y. and Harlem Railroad Co.

The city of New York had a right under the act of 1826, to *convey* any of the lands embraced within its provisions. And having in 1847, conveyed certain lands under water east of First avenue, except a space of one hundred feet in width eastward from First avenue, and in *continuation of Thirty-fourth street*, to the Farmers' Loan and Trust Company, with covenants by the grantees, their successors and assigns, to fill up the same, and erect and make a good and sufficient wharf, avenue or street, one hundred feet in width, from First avenue to Avenue A, and keep in good order said street, wharf and avenue, which should thereafter continue to be a *public street of the city*; and the Farmers' Loan and Trust Company having conveyed said premises, subject to the same provisions and conditions, to The East River Ferry Company and James M. Waterbury, who are engaged in filling in the land owned by them, including said continuation of Thirty-fourth street, one hundred feet wide to Avenue A, in pursuance of the provisions of the original grant from the corporation:

*Held,* that upon the completion of the work, and when the land was filled in, graded, regulated and paved, for the purposes of a public street, it was the intention of the city, who made the conveyance, to dedicate it as one of the public streets of the city. But it was no part of the contract that it should be thus appropriated while the work was in progress, and during that period the title to the property remained in the *corporation,* while the right to its possession and control, and its use for the purposes intended, was in the grantees who had contracted to perform the work, until its completion, its adaptation to the public use, and some act done evincing the entire fulfillment of the contract, and discharging the parties who had agreed to perform the work, and from the obligations imposed upon them: Therefore, until the fulfillment of such contract, and the finishing of the street, no *railroad company* had any right to enter upon the premises and disturb the possession of the grantees. Upon their doing so, a remedy existed by *injunction.*

*The New York and Harlem Railroad Company* was chartered in 1831, to build a railroad from the city of New York to the Harlem river. In 1832, they were authorized by the legislature to extend their railroad through certain other streets in the city of New York, as the mayor, aldermen and commonalty of said city would from time to time permit. In 1849 they were authorized to construct a branch from their railroad *to the East river,* to such point as might be designated and permitted by the corporation of the city of New York. In March, 1864, the corporation selected a point on the East river to which the said railroad might be constructed, and gave the requisite permission to extend their road through *Thirty-fourth street to the East river:*

*Held,* that the act of 1849 must be considered in connection with the permission granted by the corporation in 1864; and as the privileges granted were bestowed prior to the act of 1860, under which the *Dry Dock, East Broadway and Battery Railroad Company* claim to act, the New York and Harlem Railroad Company have *precedence in using the space in continuation of Thirty-fourth street,* when completed.

The grant to the Dry Dock, East Broadway and Battery Railroad Company in 1860, through Thirty-fourth street to Avenue A, &c., refers to points which are not recognized upon the map and plan of the city of New York, which has hitherto been considered as a correct and accurate presentation of streets and avenues. Avenue A, referred to in their charter, is on the East river, beyond the ferry house of the East River Ferry Company, and was and is entirely under

water. In law the designation made had no legal existence at the time the act was passed, nor has it since been recognized by the constituted authorities of the city of New York.

*New York Special Term, June,* 1865.

HEARING on an order granted by Justice INGRAHAM, in the first above entitled cause, to show cause why an injunction previously issued against the defendants therein, restraining them from interfering with the plaintiffs in the construction and use of their railroad in the location upon which the railroad structures and track of the plaintiffs were laid and placed in Thirty-fourth street and First avenue, prior to and on the evening of the 18th of June, 1865, and restraining the New York and Harlem Railroad Company, and their agents and servants, from using and interfering with the railroad track adopted and selected by the plaintiffs, and from maintaining or using any railroad track or structures on the location selected and occupied by the plaintiffs in First avenue and Thirty-fourth street, east of the First avenue, should not be perpetual. Also upon an order granted by Justice MILLER, in the second above entitled cause, to show cause why an injunction previously issued against the defendants, restraining them from interfering with the plaintiffs in the possession of a certain space or piece of land in continuation of Thirty-fourth street, east of First avenue, and from digging up the surface thereof, and laying down any ties, timbers or iron rails, or railroad tracks thereon, or from running cars thereon, until the plaintiffs have completed the filling in, regulating and paving of said space or street, and until possession of the same is accepted by the mayor, aldermen and commonalty of the city of New York, should not be dissolved.

H. W. ROBINSON, *for the Dry Dock and East Broadway Railroad Company.*

HORACE F. CLARK, *for Augustus Schell.*

. CHARLES A. RAPALLO, *for the Harlem Railroad Company and Oliver Charlick.*

A. J. VANDERPOEL, *for the East River Ferry Company and James M. Waterbury.*

MILLER, J. The questions presented upon the motions now to be considered, involve the rights of the parties to the use of the one hundred feet in width beyond First avenue, in continuation of Thirty-fourth street. In disposing of them, I will first consider the claim of the East River Ferry Company and James M. Waterbury, to the premises in question.

They claim a right superior and paramount to either of the other parties, and insist that neither of the railroad companies have any authority to enter upon or to lay down rails upon the territory in dispute. Their title is founded upon the grant of the mayor, aldermen and commonalty of the city of New York, made on the 29th of January, 1847, to the Farmers' Loan and Trust Company, and the subsequent transfer of that title to them. The ferry company also insist that the use of the premises by the railroad company is an interference with the rights incident to the franchise which has been conferred upon them. By virtue of the grant referred to, certain lands under water east of First avenue, except a space of one hundred feet in width eastward from First avenue, and in continuation of Thirty-fourth street, were conveyed to the Farmers' Loan and Trust Company, and by that conveyance, the grantees, and their successors and assigns, covenanted and agreed with the grantors, and their successors and assigns, that they would, within three months next after they should be thereunto required by the grantors, &c., but not until they should be thereunto required, at their own proper costs and charges, build, erect, make and finish, or cause to be built, erected, made and finished, according to any reso-- lution or ordinance of the parties of the first part, a good

and sufficient wharf, avenue or street, one hundred feet in width, from First avenue to Avenue A, being the space in question in these actions. The conveyance also provided, that the grantees, &c., should keep in good order said street, wharf and avenue embraced in said one hundred feet, and that it should thereafter continue to be a public street of the city of New York, and in case of a failure to comply with any of the said covenants, a right of re-entry was reserved by the deed.

Under this conveyance, the East River Ferry Company and James M. Waterbury have been for several months past, and now are engaged in filling in the land owned by them, adjacent to the said one hundred feet, as well as said space of one hundred feet, and in constructing a sewer by and under the direction of the Croton Aqueduct Department, and are preparing to grade and pave said space as soon as the city authorities shall fix and determine the grade lines to which they must conform, as required by the covenant in the deed. No proceedings have ever been taken by the corporation of New York to lay out Thirty-fourth street as a public street from First avenue to the ferry honse, and there has been no interference with the ferry company and Mr. Waterbury, in performing the work until the railroad companies attempted to take possession and occupy, by laying down their tracks.

The land in reference to which this controversy has arisen, was originally, and until quite recently, a part of the East river, and entirely under water. In 1807, an act of the legislature was passed, by which commissioners were appointed to lay out the city of New York north of a certain line, and to prepare and file a map of the streets, &c. Section eight of that act declared, that said plan should be final and conclusive. A map was accordingly made in pursusance of the provisions of this act, and the space of one hundred feet beyond First avenue, in continuation of Thirty-fourth street, is not there laid down as a street. It

would appear, therefore, that if it is to be considered as a public street, it must be in consequence of the conveyance of the Farmers' Loan and Trust Company, or some act which has since then been done, under and by means of that conveyance and the contract incorporated in it. This map has been repeatedly referred to and changed by subsequent legislation in relation to the plan of the city, thus recognizing its validity, and a conceded necessity of legislative interference when any material alteration was required. When streets and avenues have been extended and continued upon the same lines, application has been made to the legislature, and its consent obtained (*S. L. of* 1837, *chap.* 274, *p.* 291, *and chap.* 182, *p.* 166). Laws of this character would not be essential, if streets and avenues, made by the filling up of land under water, could be otherwise established. The grant, then, to the Dry Dock, East Broadway and Battery Railroad Company, through Thirty-fourth street to Avenue A, &c. (*S. L. of* 1860, *chap.* 512), refers to points which are not recognized upon the map and plan of the city of New York, which has hitherto been considered as a correct and accurate presentation of streets and avenues. In law, the designation made had no legal existence at the time the act was passed, nor has it since been recognized by the constituted authorities of the city of New York.

The title to the land in question, or a considerable portion of it, appears to have been vested in the authorities of the city of New York, under the act of 1826. By that act the title to all lands four hundred feet east of low water mark on the shore of the East river, was vested in the mayor, aldermen and commonalty of the city of New York. In the case of *Furman* agt. *The Mayor, &c.* (10 *N. Y.* 567), the court of appeals recognized the ownership of the public authorities in the land embraced within the limits named, and a right to sell or dispose of the same. If such right existed as was held in the case cited, then certainly the

conveyance of the Mayor, &c., to the Farmers' Loan and Trust Company, was a valid and legal one, and the grantees and their assigns would have a right to hold the land upon the conditions therein contained, until they had an opportunity to fulfill them according to the intent, and the tenor and effect of the grant.

I think that the city had a right, under the act of 1826, to convey any of the lands embraced within its provisions. And having conveyed a portion within the limits provided by that act to the Farmers' Loan and Trust Company, their grantees and assigns became vested with all their title to the property, and with authority to proceed and fill up the land, and to lay out the streets in accordance with the covenant contained in the deed. It was no doubt intended by the mayor, aldermen and commonalty, who made the conveyance to the Farmers' Loan and Trust Company, to dedicate the space of one hundred feet wide in continuation of Thirty-fourth street, upon the completion of the work, and when the land was filled in, graded, regulated and paved, for the purposes of a public street. It was no part of the contract that it should be thus approriated while the work was in progress, and during that period the title to the property remained in the corporation, while the right to its possession and control, and its use for the purposes intended, was in the grantees who had contracted to perform the work, until its completion, its adaptation to the public use, and some act done evincing the entire fulfillment of the contract, and discharging the parties who had agreed to fill up, and grade and pave, from the obligations imposed upon them. There was no power or authority in the railroad companies, to interfere with the rights vested by the conveyance under which the ferry company and Waterbury claimed to act. The violation of the agreement to do the work, would have worked a forfeiture of the land conveyed, and the benefits to be derived from the

grant, and the railroad companies had no right to prevent a fulfillment of the contract.

The temporary use of a portion of the land filled up, was not, in my opinion, such a dedication of it as a public street, as would confer any rights upon the railroad companies or the public, which would interfere with the contract. The conveyance provides for the use of the space for the purpose of being filled in and graded, and so long as the contract was incomplete and in the progress of fulfillment, within a reasonable limitation, there was no dedication to the public. Even conceding the application of the rule laid down in *The People* agt. *Kerr* (27 *N. Y.* 188), that the title was only vested in the corporation of the city of New York *publici juris*, yet it would be, I think, within the principle laid down in that case, to allow the grantees or their assigns to proceed to complete the improvements contemplated by the grant made, without molestation or hindrance from parties whose interests, if any existed, were subsequently acquired. And until this was done, they should be allowed to enjoy full and entire possession of the premises. Such a course would be for the benefit of the public, as well as consistent with the rights of parties and the obligations of contracts.

For the reasons I have given, I am brought to the conclusion that the ferry company and James M. Waterbury, were lawfully in possession of a considerable portion, if not all, of the space of one hundred feet east of First avenue, by virtue of the deed from the municipality of the city of New York to the Farmers' Loan and Trust Company, and so long as they were endeavoring to complete their work within a reasonable time, or until the notice of three months provided for had been served, and had expired, the railroad companies had no right to enter upon the premises and disturb their possession. Upon their doing so a remedy by injunction restraining them, existed in behalf of the

injured parties, to protect their rights to the extent of the territory which they were lawfully entitled to hold.

The conclusion at which I have arrived upon the points considered, render it unnecessary to inquire whether the acts of the railroad companies interfere with the chartered rights and privileges of the ferry company. The views which I have expressed, dispose of all the questions presented, so far as the rights of the East River Ferry Company and James M. Waterbury are concerned; but as the possession of the premises by them must be a temporary one, for specified objects, which will be accomplished in the course of a short time, it becomes important to consider the relative claims of the rival railroad companies, as between themselves.

The Dry Dock, East Broadway and Battery Railroad Company, was organized under the general railroad act, and is in the enjoyment of franchises conferred by an act of the legislature of the state of New York (*S. L. of* 1860, *chap.* 512), which authorized certain individuals therein named, and their assigns, to construct a railroad through certain streets in the city of New York to Thirty-fourth street, and thence through and along Thirty-fourth street, with a double track, to Avenue A, and thence through and along Avenue A, with a double track to, and to connect with the double track in Fourteenth street; the Avenue A referred to in the act, is on the East River, beyond the ferry house of the East River Ferry Company, and was and is entirely under water.

The New York and Harlem Railroad Company was chartered in 1831, to build a railroad from the city of New York to the Harlem river (*S. L. of* 1831, *chap.* 265). In 1832 they were authorized by the legislature to extend their railroad through certain other streets in the city of New York, as the mayor, aldermen and commonalty of said city would, from time to time, permit (*S. L. of* 1832, *chap.* 93, § 1). In 1849 they were authorized to construct a

branch from their railroad to the East river, to such point as might be designated and permitted by the corporation of the city of New York (*S. L. of* 1849, *chap.* 75, § 3). In March, 1864, the municipality of the city of New York selected a point on the East river to which the New York and Harlem Railroad Company might be constructed, and gave the requisite permission to extend their road through Thirty-fourth street to the East river.

I think that the determination of the rights of the several railroad companies must depend upon the construction to be given to the third section of the act of 1849, by virtue of which the New York and Harlem Railroad Company was authorized to construct a branch from their said road to the East river, at such a point as may be designated and permitted by the corporation of the city of New York. In the construction of statutes, we must look at the intention of the legislature in passing the act, and the objects to be attained by it. Having in view this well established rule, it is quite evident that the enactment in question was designed to furnish a terminus to the railroad at some convenient point at the East river, which the authorities of the city might designate, and which would be consistent with the objects and purposes of the railroad company. The New York and Harlem Railroad Company was authorized to construct it to the East river, and the corporation were to designate the point. The right to locate was a discretionary power vested in the city authorities, and to be exercised at such times, and under such circumstances, as they might deem proper. The power conferred upon the corporation was not limited to any particular day, and was not to be exercised within any given number of years. It was not to be required to be done immediately, or within any fixed or definite period. It could be invoked at any time when deemed appropriate and necessary.

It is urged that by the expression " to the East river," was meant the East river as it then existed, at the time

of the passage of the act of 1849, and that the New York and Harlem Railroad Company have no right to extend their road east of the original high water mark on the East river, which was west of First avenue. The act itself contains no such limitation, and I think will not bear such a construction. It specified no time within which the point named was to be designated, and as it was uncertain, and not limited, was evidently designed to leave the time indefinite, and to be determined by subsequent events, and by circumstances. As the time was not precise and certain, it would appear to have been the intention of the act that the point in the East river should be determined with reference to the time when it was designated by the corporation. The corporation, beyond any question, had the right to grant the permission in 1864. If they had such right then, the designation could be made at any point upon the East river as it then existed. If the corporation were only authorized to designate a point upon the East river as it was at the time of the passage of the act of 1849, then a location could have been selected some distance from the East river, and not at a point upon it. Such a result could not have been contemplated, and any such interpretation would render the act ineffective for the purposes which were designed to be accomplished, and therefore should be avoided, if possible. It may also be observed, that if the construction contended for is a correct one, it might place it beyond the power of the corporation to designate many points on the East river, which would have been eligible, and within the spirit of the act, prior to the filling up of the space intervening between its former and present exterior western boundary.

It is also insisted that grants bounded by tide waters only extend to high water mark, and that this rule limits the designation. I am inclined to think that the expression employed can scarcely be considered as a boundary of a grant. It is merely an authority to extend a railroad to a

certain point in the city in which it is located, by the license and permission of the corporate authorities. If, however, it can be considered as a boundary, as the point of termination is to be fixed at a future period or time, by another body, I think the rule would not apply until the point was designated.

The act of 1849, which conferred the right to extend the road of the New York and Harlem Railroad Company to the East river, must be considered in connection with the permission granted by the corporation in 1864. And as the privileges granted were bestowed prior to the act of 1860, under which the Dry Dock, East Broadway and Battery Railroad Company claim to act, I am of the opinion that the New York and Harlem Railroad Company have precedence in using the space in continuation of Thirty-fourth street, when it is completed in conformity with the conditions of the conveyance to the Farmers' Loan and Trust Company. At present neither of the railroad companies have any right to interfere with the parties who were in possession and entitled to control it at the time when the injunction in these cases were granted. The discussion already had covers all the material questions presented, and renders it unnecessary to examine some other points urged upon the argument.

It follows from the remarks made, that the temporary injunction issued in the first case must be dissolved, and in the second case the order to show cause should be vacated, and the injunction continued. Ten dollars costs of making and of opposing motion, should be allowed in each case to the prevailing party.