The 'Central City Horse Railway Company, etc.

*v.*

The Fort Clark Horse Railway Company.

1. Eminent domain—*taking part of horse railway.* One horse railway company has no right, by proceedings of condemnation, to take for its joint use a part of a previously constructed railway of another company in successful operation, and thus render the fragments not so taken unproductive, and make the franchise of the first company of but little value, and if such an attempt is made, a court of equity will enjoin the same.

2. Same—*statute construed.* The statute authorizing the condemnation of property by horse and dummy railroads, ch. 66, R. S. 1874, contemplates private property alone, and not property used and occupied by the public.

3. By a very liberal construction of the statute and of the Eminent Domain Act, it may be that a newly organized horse railway company may condemn the entire road of a similar company, previously incorporated, and appropriate it to its own use on paying just compensation therefor.

Appeal from the Circuit Court of Peoria county; the Hon. Thomas F. Tipton, Judge, presiding.

Mr. H. B. Hopkins, Mr. L. Harmon, and Mr. J. Hough, for the appellant.

Mr. D. McCulloch, and Mr. H. W. Wells, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

The General Assembly of this State, on February 21, 1867, passed an act entitled "An act to provide for the construction of horse railways in the city of Peoria," by which the corporators therein named were authorized and empowered to construct and maintain horse railroads along such streets in the city of Peoria as the city council might authorize.

The city council, on October 6, 1869, adopted an ordinance authorizing complainants to construct and maintain horse railways along certain streets named therein, of which Adams street was one, the whole length thereof. Complainants duly organized as a corporation under the act of 1867, and built

and equipped a horse railway along Adams street, and commenced operating the same for near three miles, in December, 1870, at a cost of eighty thousand dollars. It was the first railway of the kind constructed in that city, and when the enterprise was inaugurated it was understood to be of doubtful result to the proprietors, in a financial view, and can only produce productive results by centering it, in its entirety, under the exclusive supervision of one authority and head.

In July, 1872, certain individuals became an incorporation under the general law, under the corporate name of the " Fort Clark Horse Railway Company." Articles of association were duly executed and filed in the office of the Secretary of State, and the usual license by that functionary, to commissioners named therein, to open books for subscription to its capital stock.

In May, 1873, the report of the commissioners, filed in the office of the Secretary of State, showed the entire stock had been subscribed. The corporation was duly organized May 17, 1873, whereupon, the Secretary of State issued a certificate of incorporation.

Before the organization of this company had been perfected, and on August 6, 1872, the city council of Peoria passed an ordinance, conferring upon a railroad company, with the name of defendants' company, authority to construct and maintain a horse railway over certain streets in the city, within certain limits, some eight different streets, of which Adams street was not one.

In August, 1874, complainant company, having completed their road four years previously, and then in the profitable enjoyment of their franchise, producing some equivalent for their great outlay, were met by an application of this last constructed corporation to the city council, requesting that body to pass an ordinance to confer upon the defendant company authority to construct and operate a horse railway, to depart from their line of way already then established and operated by them, so as to occupy Adams street, then occupied by complainants. The city council passed the ordinance permitting

defendants to build and operate a railway on Adams street, to Harrison street, and reciting therein, that "the public interest forbids the laying any more tracks on Adams and Main streets." The defendant company were authorized and empowered, and required, to run their cars on and over, and to use for that purpose, any and all the tracks and rails now laid on Adams street and Main street, and to make the necessary connections with the same, "provided they should first acquire, by purchase from the owner, or by condemnation or other legal means, the right to use and run over said tracks and rails."

To avail of this ordinance, the defendant company, in October, 1874, presented their petition to the judge of the Peoria county court to proceed, according to the act in force July 1, 1872, respecting eminent domain, to assess the damages to be paid complainant company for taking and appropriating to the use of defendant company the railroad track, iron, ties and superstructure along that portion of Adams street running between Main street on the east and Harrison street on the west, fronting the three blocks numbered, on the south side, as 6, 5 and 33, and on the north side as blocks 10, 11, 32. The proceedings for condemnation were set for trial on October 24, 1874, to prevent which this bill was filed, alleging the result of such proceeding would be a destruction of complainants' franchise, and productive of irreparable damage to them. An injunction was prayed and granted.

An answer was put in to the bill, and a replication thereto, and on the hearing the injunction was dissolved and the bill dismissed. Complainants appeal.

We shall not discuss all the questions raised upon this record, but confine ourselves to such points, the decision of which will be decisive of the case.

It is not shown, in any part of the case, where the fee in Adams street is vested. We will assume it is in the city. The grant of an easement therein by the city to appellants was in 1869. That of appellees was in 1872, and before the company was organized. The right of appellants was, consequently, prior in time to any right claimed by appellees.

It would seem, from the plat of the city of Peoria, made an exhibit in the cause, with the lines of these contesting roads distinctly marked thereon, that appellants' road extends from South street, on the west, along Adams street, by a straight line east to Abington street, in close proximity to the Chicago, Rock Island and Pacific railroad, and near to the Peoria city water works, a distance, from its commencement to its terminus, of three miles, as is alleged. The width of this street is not noted on the map, nor is there any scale of feet—to the eye it appears to be a very wide street, capable, without detriment to the public, of allowing space sufficient for two railroads, did the public necessity demand greater accommodation than appellants' road could supply.

From the map, we should judge the lines already established by these companies are, in a great measure, competing lines, that of appellees being parallel with appellants' line from Mary street, the street next west of appellants' terminus, to Main street, a distance, judging by the eye, of near one-half of appellants' road.

The proposition of appellees is, after their road has reached Main street, it shall be permitted to make a sharp turn to the south along Main street, to its intersection with Adams street, then west, taking possession of appellant's road, the distance of three blocks, then turn sharp to the north one block along Harrison street, to their line of road on Franklin street, thus breaking appellant's road nearly in the middle, and rendering their franchise comparatively worthless. The question then is, under the laws of this State, can a competing horse railway company in an incorporated city acquire, by compulsion, a title to, or the joint use of, the track and superstructure of another like corporation, and for the express purpose of making the part so compulsorily taken, a portion of its own line?

At first blush, the proposition seems so indefensible, as to cause no hesitation in giving a negative answer.

Appellees say, this right now claimed by them is, if not expressly, at least impliedly, conferred by chap. 66, R. S. 1874, title "Horse and Dummy Railroads," p. 571.

An examination of that act shows, that private property, not property used and occupied by the public, was alone in the contemplation of the legislature when the act was passed.

If street railroads were thought of, or designed to be included in the act, why were they not named? Section 3 provides, no such company shall have the right to locate or construct its road upon or along any street or alley, or over any public ground in any incorporated city, town or village, without the consent of the corporate authorities of such city, town or village, nor upon or along any road or highway, etc. It is a strained construction of this statute to include within its terms street railroads, authority to construct which had been granted by the city, and in actual use.

We do not wish to be understood as holding, one railroad company may not condemn the road of another, under a power granted by the legislature so to do—on this we express no opinion; but we do insist, an established railroad being a public institution, and useful only in its entirety, can not be cut up and sectionized by a competing road, acting under an ordinance of a city council. Proceedings might be instituted, perhaps, to condemn the entire road and franchise, and thus pass it over as an entirety to the competing road; but that one competing road can bisect it here, and another there, at a different point, taking to themselves the most productive portions of the road, and leaving an unproductive fragment to the first proprietors, we do not believe, and have seen no authority giving countenance to a doctrine, in its operation so unjust and at war with just principles. And we are at a loss to understand how this part of appellants' franchise, occupying the most populous and business part of the city, can be operated jointly by their competitors. But whether it can or not be safely done, it is unimportant to inquire, as, in our opinion, one competing street railroad company can not take, by the exercise of the right of eminent domain, a fragment of a competing road in successful operation, and the most valuable part of it, and thus destroy, in effect and usefulness, and value, the remaining fragments.

Appellees may, perhaps, by a very liberal construction of the act cited, and of the Eminent Domain Act, condemn the entire road of appellants, and appropriate it to their use, on paying just compensation therefor.

Appellees say they seek only to take the *use* of a small portion of appellants' track. Herein lies the insuperable objection to this proceeding. Take the whole or none, is the command of justice and honesty. It is not at all like the 'case of an ordinary proceeding to condemn private property for a railroad, in which it would be no answer to say, take my whole farm or the whole tract, or none. In such case, there would be no propriety in such a demand by the proprietor of the land. Here, is wanted a portion of appellants' franchise, the exclusive use of which, by them, gives value to the whole franchise. There is, then, manifest propriety in saying to the competing road, take all or none.

There is no apparent reason why an easement in this street, wholly independent of that of appellants, should not be granted by the city authorities to appellees, if the public accommodation is not sufficiently subserved by this single road. The street is wide enough for another independent track, without encroaching upon the public accommodation. The plausible plea of public policy forbidding another track there, may be a mere cover for a purpose. We see no ground, legal, just or equitable, for this grasping claim of appellees, and it should not receive the favorable consideration of a court of justice and of equity.

It is unnecessary to cite authority to sustain these views. The principles find a lodgment in every breast animated by right and justice and equity.

So far as this court has heretofore spoken on this question, a reference may be made to *Peoria, Pekin and Jacksonville Railroad Co.* v. *The Peoria and Springfield Railroad Co.* 66 Ill. 174, which was an application to condemn lands belonging to one company for the track of the other, it was held, that land not in actual use by, or necessary for the uses of the railroad, might be condemned, clearly implying, if it was in act-

ual use for their track or appurtenances, it was not subject to condemnation by another road.

Competition, an honest, healthy competition, is productive of good. The law affords no aid to that kind of competition which claims the right to crush a competitor, to advance a rival interest.

We are satisfied the injunction should not have been dissolved, but the same should have been perpetuated. If appellees desire to possess this franchise and property, already devoted to public use, let them institute proceedings to that end.

For the reasons given, the decree is reversed and the cause remanded, with directions to reinstate the bill, and make the injunction perpetual.

*Decree reversed.*