THE METROPOLITAN CITY RAILWAY COMPANY

*v.*

THE CHICAGO WEST DIVISION RAILWAY COMPANY.

1. EMINENT DOMAIN—*right to condemn is derived from State.* The right of a corporation to condemn property and appropriate the same for the construction, operation and maintenance of a horse or dummy railway in the streets of a city, is derived solely from the State law, and the consent of the city authorities to the construction and operation of such railway is not a condition precedent to proceedings to condemn. Such consent can be obtained after condemnation as well as before, and, if given, is a mere license, revocable at any time before it is acted on.

2. SAME — *proceeding to condemn a right of another admits his right.* The filing of a petition by a railway company to condemn whatever "property rights, interest or privileges" a defendant corporation may have in certain streets by contract with the city, admits the legality of that contract, at least for the purposes of the proceeding, and estops the petitioner from insisting the defendant has no interest in that which is sought to be condemned.

3. SAME—*what property subject to.*\* Under our statutes, a company incorpo-

---

\*See, also, *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 Ill. 333, and cases there cited, holding that the fact that property sought to be taken for a public street, by a town authorized to do so, belongs to a corporation which acquired its title by the exercise of the right of eminent domain, does not affect the right to take it. See *Cincinnati, LaFayette and Chicago Railroad Co.* v. *Danville and Vincennes Railway Co.* 75 Ill. 113, in respect to proceedings by one company to condemn the right of way of another.

rated for the purpose of constructing and operating "horse and dummy railways," has the right to enter upon and appropriate any property necessary for constructing its road, upon making compensation therefor, when ascertained according to law. Where a horse railway company operating its railway has, by contract with a city, acquired a right in not having a similar railway on certain other streets running parallel with its road, this will be property, in the sense of the Eminent Domain act, and may be taken and condemned for the use of a new company, where the public necessity so requires.

4. Under our constitution, the property and franchises of incorporated companies may be subjected to public necessity, as well as the property of individuals; and the exercise of the right and power of eminent domain can never be so construed or abridged as to prevent the General Assembly from appropriating such property, where the public exigency demands it. Whatever exists, in any form, whether tangible or intangible, is subject to the exercise of this power.

5. FRANCHISE—*right of corporation in street.* The interest a city railway company may have in certain streets, derived by contract with the city prohibiting their use by any other company, is no part of the company's franchise, but is in the nature of property, and is an incorporeal right. A franchise emanates from the sovereign power of the State alone.

6. PROPERTY—*defined.* Property, in its broadest and most comprehensive sense, includes all rights and interests in real and personal property, and, also, in easements, franchises and incorporeal hereditaments.

7. ERROR—*working no injury.* The correctness of striking a defendant's pleas to a petition to condemn property for public use from the files, will not be inquired into, where the defendant, by answer subsequently filed, had the full benefit of all the matters of defense presented by his pleas.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. C. B. LAWRENCE, Mr. M. F. TULEY, Mr. L. G. PRATT, and Mr. D. L. HOUGH, for the appellant.

Mr. C. BECKWITH, and Mr. B. F. AYER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The Metropolitan City Railway Company, a corporation organized under the general incorporation act, for the purpose of constructing and operating horse and dummy railways in Chicago and in other portions of Cook county, filed its peti-

tion, in which it represented to the court that, by an ordinance passed on the 30th day of April, 1875, the company was authorized to lay down, operate and maintain railway tracks upon Lake street, Lake street bridge and West Lake street, from the Union Depot, at the foot of Lake street, to Canal street, and on Canal from West Lake street to Fourteenth street, in the City of Chicago, for and during a period of twenty years from the 30th of April, 1875; that the Chicago West Division Railway Company has, or claims to have, some property right, interest or privilege in such streets, which will be destroyed or damaged by laying down, operating and maintaining railway tracks thereon by petitioner, which property right, interest or privilege petitioner is desirous of appropriating, or so much thereof as may be necessary, for the purpose of laying down its tracks, and of maintaining and operating them; and that, inasmuch as the compensation to be paid for, or in respect to, the property right, interest or privilege claimed by defendant corporation, so sought to be appropriated, could not be agreed upon by the parties interested, petitioner prayed it might be condemned under the eminent domain law.

On appearing to defend, the defendant corporation filed thirteen special pleas, the substance of which is, that petitioner is not, and was not, a body politic and corporate, and could not, therefore, invoke the aid of the eminent domain law for the purpose of condemning property to public use; that the ordinance of the 30th of April, 1875, passed by the common council, on account of sundry reasons, specifically set forth, among which was, that the notice required by statute was not first given, was void, and hence gave no consent to petitioner to locate, construct and operate its railroad in the streets mentioned in the ordinance; that petitioner had given no bond, as required by the provisions of the ordinance; that the consent granted was void, because for a longer period than the common council was authorized to grant by the general law; that the ordinance did not make it a condition precedent that

petitioner should first pay all damages that might be sustained by abutting land owners by reason of constructing its road, and that the Chicago City Railway Company had, by contract made with the common council of the city of Chicago, and sanctioned by an act of the General Assembly, the right to have all horse railways excluded from certain streets, among which is that portion of Lake and Canal streets which petitioner seeks to condemn for the use of its horse railway, for a definite number of years, not yet expired,—to all the benefits of which contract defendant had succeeded.

Other matters, of minor importance, are set forth in the pleas, but it will not be necessary to an understanding of the case to state them.

On motion of petitioner, all the pleas of defendant were stricken out, but on leave being given to answer, the same matters of defense were insisted upon in the form of an answer to the petition. A trial was had upon the merits of the case, and the jury to whom the cause was submitted found the damage that would be sustained by defendant on account of property taken, viz: the right to have preserved and kept free from horse railways the streets named, to be one cent. The motion made by defendant for a new trial was overruled, and thereupon petitioner moved for a judgment on the verdict, but that motion was also overruled, and, on motion of defendant, the whole proceeding was dismissed out of court. Both parties have preserved exceptions to the several rulings of the court. The case comes to this court on the appeal of petitioner, but defendant has availed of its privilege, under the statute, to assign cross-errors.

Although questioned in the answer of defendant, it is not insisted in argument that the petitioning corporation was not duly organized under the general law. It seems to be conceded it is a corporation authorized to construct and maintain a horse railway, although wanting in authority to use for that purpose any street in the city of Chicago except with the consent of its common council. Whether any defects might be devel-

oped, on *quo warranto*, that would seriously affect the validity of its organization, we have not deemed it necessary to inquire, for it does appear to be a corporation in fact, and the people have not seen fit to demand, in any appropriate form, by what authority it assumes to exercise its franchises and privileges. Such a corporation, by the act of the legislature in relation to "Horse and Dummy Railways," is empowered to enter upon and appropriate any property necessary for the construction, maintenance and operation of its road, the compensation therefor to be ascertained and made in the manner provided by law for the exercise of the right of eminent domain.

Elaborate arguments have been made as to the validity of the ordinance of 30th of April, 1875, under which petitioner alleges it obtained the consent of the common council to construct its railway on certain streets, and maintain the same for a definite number of years. The necessity for considering whether that ordinance was legally enacted, or whether it has the effect to confer upon petitioner · the license or privilege claimed, is not perceived, so far as it can have any direct bearing on the decision of this case. Petitioner does not derive its power to condemn the "property right, interest or privilege" defendant claims in the streets named, from that ordinance. The authority to exercise the right of eminent domain is derived solely from the State, and in this instance it is conferred by the act cited in relation to "Horse and Dummy Railways." Obtaining consent of the common council of the city to laying the track of petitioner's railway in any given street, is not a condition precedent to condemning such property right, interest or privilege as defendant may have previously acquired, by contract or otherwise, in such streets. That consent may, with equal propriety, be obtained afterwards, and it is immaterial when it is secured. The granting of such consent is always a matter of discretion with the municipal authorities. At most, it is a mere license granted by the owner of the fee of the streets, and is revocable at any time before it is acted upon. No matter what conclusion may

be reached as to the legality of the ordinance, it is not a question that, in any degree, affects petitioner's right to condemn the property of defendant, or any one else, for the purposes of its organization, and we forbear to remark upon the numerous objections urged against its validity.

The fact of filing the petition to condemn whatever "property rights, interest or privileges" defendant may have in the streets indicated, under its contract with the common council, admits the legality of that contract, certainly for the purposes of this proceeding. Petitioner, after invoking the aid of the law to condemn certain property of defendant, will not be permitted to stultify itself by insisting defendant has no interest in that which it seeks to condemn to its own use under the Eminent Domain act. Treating the contract between the Chicago City Railway Company and the common council, to all the benefits of which defendant has succeeded, to have all horse railways excluded from certain streets for a definite period, as binding in law, and as conferring the rights claimed under it, the only question that can arise in the case is, whether power has been delegated by the General Assembly to petitioner to condemn the rights in question.

The inquiry suggested, as to the authority of petitioner, under the statute, to condemn any portion of defendant's franchises, is not involved in the decision of this case. Petitioner has not sought and is not seeking to condemn to its use any franchise conferred upon defendant by any act of the legislature. The interest defendant may have in Lake and Canal streets, under its contract with the common council, comes within no definition of a franchise. Whatever rights or interests defendant may have in such streets, under its contract, must be regarded as in the nature of property, and arises by private contract. It is not a franchise in any sense that term is used in the law. As was declared in *Chicago City Railway Co.* v. *The People,* 73 Ill. 541, a corporate franchise emanates from the government, or sovereign power of the State, owes its existence to a grant, or, as at common law, to prescription, which

pre-supposes a grant.   Counsel concede what is plainly the law, that the consent of the common council could no more confer a franchise than the consent of an individual land owner.

We recur to what may be regarded as the principal question presented by the record, viz.: whether power has been delegated by the General Assembly to petitioner to condemn, under the Eminent Domain act, such "property rights, interest or privileges" as defendant may have, under its contract with the common council, in Lake and Canal streets. The interest defendant has in portions of Lake and Canal streets, and which petitioner seeks to have appropriated to public uses, is an incorporeal right, arising out of a contract, and, if anything, it is property belonging to a corporation. That is the most favorable view that can be taken for defendant.   Assuming that defendant's interest in these particular streets is an interest in the nature of property, can petitioner enter upon and appropriate it to public uses, by first ascertaining and making just compensation therefor, in the mode provided by law for the exercise of the right of eminent domain?   We think it can.   Under our constitution, the property and franchises of incorporated companies may be subjected to public necessity, as well as the property of individuals, and the exercise of the power and right of eminent domain can never be so construed or abridged as to prevent the General Assembly from appropriating such property, when the public exigency demands it.   As we have seen, the statute has conferred upon companies incorporated· for the purpose of constructing and operating "horse and dummy railways," the right to enter upon and appropriate any property necessary for constructing its road, the compensation therefor to be ascertained and made, as provided by law for the exercise of the right of eminent domain.   If the right or interest defendant claims in particular streets is included within any definition of property, there can be no question it may be subjected to public necessity under the law of eminent domain, and the

necessity for doing so is always with the State, the same as the property of individuals and in the same manner. Property, in its broadest and most comprehensive sense, includes all rights and interest in real and personal property, and also in easements, franchises, and incorporeal hereditaments. That which may be taken for public uses is not exclusively tangible property. The right of eminent domain is an attribute of sovereignty, and whatever exists in any form, whether tangible or intangible, may be subjected to the exercise of its power, and may be seized and appropriated to public uses when necessity demands it. If it shall be conceded the right claimed by defendant, under its contract with the common council, could be classed as a franchise, which it can not, it is, nevertheless, a right in the nature of property, within the sense that term is used in the law, and no reason is perceived why it could not be condemned to the use of the public. It is true it is corporate property, but it is not used or employed for the benefit or in the service of the public. It is held and claimed exclusively for private gain, and as being beyond the reach of the extraordinary power of eminent domain. No principle is better settled than that all mere private interests are subordinate to the public welfare. We are aware of no policy of the law that forbids the taking of such property for public uses, nor is it forbidden by any limitations imposed by the constitution. Other courts and law writers have given expression to views, to which we may refer as clear expositions of the law on this subject, and as illustrating, in some measure, the case in hand. *B. and L. Railroad Co.* v. *S. and L. Railroad Co.* 2 Gray, 1; Cooley's Con. Lim. p. 281.

Counsel cite, with great confidence, the case of *Cen. City Horse Railway Co.* v. *Ft. Clark Railway Co.* 81 Ill. 523, as declaring principles that must control the decision of the case at bar. In that case it is stated, with entire accuracy, the limitations that must be understood to exist to the comprehensive powers conferred by the act in relation to "Horse and Dummy Railways," on corporations organized for the construction of such

roads, in regard to the exercise of the power of eminent domain for the purposes of their organizations.    An examination of that act, it is said, shows that private property, not property used and occupied by the public, was alone in the contemplation of the legislature when the act was passed. Reference was made to the case of *Peoria, Pekin and Jacksonville Railroad Company* v. *Peoria and Springfield Railroad Company*, 66 Ill. 174, being the only case in which this court had previously spoken on this subject, as declaring principles that lead to the same conclusion.    The decision is placed on the distinct ground, the property sought to be condemned was already in the use and occupation of the public, and the taking of a part of the road would effectually destroy the usefulness of that which remained.    But that is not the case here.    There is no pretense the property sought to be condemned in this case was, or is, in the use and occupation of the public, nor that the taking of it could, by any possibility, impair the usefulness of defendant's road, located, as it is, on another street.    Such a claim would be preposterous. The ultimate effect of locating petitioner's road upon a parallel street, might be to lessen the tolls defendant would receive, but, for such an injury compensation could be made.    Our conclusion is, that, in any view that can be taken, conceding, as the petitioner does, defendant has some interest in Lake and Canal streets, that interest is in the nature of property, and is subject, not being in the actual use or occupation of the public, to be condemned to public use by petitioner, under the laws of the State.

As to the cross-errors assigned, it is not perceived that any of them affect the merits of the case.    It is a matter of no consequence whether the decision of the court striking defendant's pleas from the files, was strictly correct, as the same matters of defense were set forth in the answer, and defendant had the benefit of such defense to the same extent it would have had, had the pleas been permitted to stand.

There was no prejudicial error in the admission of evidence,

or in the giving of instructions. The instructions given for both parties are brief and pertinent to the case, and express with sufficient accuracy the law applicable to the facts upon which the jury were to pass. Nor do we think there is anything in the point made, that the verdict is manifestly against the weight of the evidence. What would be a "just compensation" for the "property right, interest or privilege" which defendant claims in the streets named, and which petitioner seeks to condemn to public uses, is a question of fact upon which the evidence submitted was quite conflicting. On careful consideration of the evidence, it seems the verdict rendered indicates the jury had a very clear comprehension of the whole case. In view of the character of the "property" or right claimed, it is doubtful whether any verdict, differing materially from that rendered, could be permitted to stand. There is nothing in the claim put forth by defendant that commends it to any favorable consideration, and, although the compensation found is nominal, in view of the evidence submitted it is quite enough.

The judgment will be reversed, and the cause remanded, with directions to the court below to enter judgment on the verdict.

*Judgment reversed.*

Mr. JUSTICE SHELDON, dissenting:

The second instruction given to the jury in behalf of the appellant, to which exception was taken, the giving of which is assigned as one of the cross-errors, was as follows:

"2. The jury are instructed that they are not called upon to decide, in this case, how much the Chicago West Division Railway Company would be damaged, if there should be a rival horse railway line established upon Canal street, from the Chicago, Burlington and Quincy Railroad tracks to Lake street, or on Lake street east to Peck street; but they are to determine, from all the facts in the case, as they have been made to appear from the evidence, what amount of money

would be a just compensation to the owner for the property sought to be taken or damaged in this case."

The first clause of this instruction was misleading. The material question for the determination of the jury was, how much the appellee would be damaged by the construction of a rival horse railway on the portions of the streets named, although they were not required to report in that precise form of words. The evidence on both sides was directed to that issue, witnesses on the part of appellee testifying to such damages in terms, and their amount. Nine in number of such witnesses, all of them having had long practical experience in the management and operation of horse railways in Chicago, testified, severally, that the damages would be very large, exceeding in amount the sum of $100,000.

In view of such evidence, and the verdict which was rendered, there is reason for the gravest apprehension that the jury were misled by this instruction, and I think the giving of it should, under the circumstances, be held to be error, entitling appellee to a new trial.

The 28th section of the general incorporation law, under which this corporation of the Metropolitan City Railway was formed, provides: "Nothing in this act shall be construed to allow the construction or operation of any street railroad in any city, town or incorporated village, without the consent of the local authorities." And section 3, of the "Act in regard to Horse and Dummy Railroads," approved March 19, 1874, (Rev. Stat. 1874, p. 548) under which is derived the only authority for instituting the proceedings in this case, provides that no such company shall have the right to locate or construct its road upon or along any street of any incorporated city, without the consent of its corporate authorities.

It appears to me that this consent, with respect to the streets concerned, is a prerequisite to the right to exercise the power of eminent domain here claimed; that, until after such consent has first been obtained, in the mode and in accordance

with the conditions upon which it may be granted, as pointed out in the latter act, there is no right to use the streets for the purpose of a railway, and so no right to demand the judgment of condemnation here sought, for such purpose.

Mr. JUSTICE DICKEY: I think the judgment ought to be reversed, but can not concur in the direction given to the court below, to enter judgment on the verdict. On the proofs, I think the compensation allowed is not sufficient, and I concur with Mr. Justice Sheldon in pronouncing the instruction mentioned erroneous, and calculated to mislead the jury. Whatever may be thought of the validity of the claim of appellees to the right of having other railroads excluded from the streets in question, the appellants, by their proceeding, recognize the right, and propose to pay a just compensation for the invasion of the right. I can not believe, in view of the proofs in the case, that such right is of no greater value than that found by the jury. As to the consent of the local authorities for the establishment of the new line, I think that is a matter with which appellees have no concern, and a matter about which no question can arise in this proceeding. On this branch of the case I concur with a majority of the court.

Mr. JUSTICE WALKER: I hold that permission from the city to locate the road in the street, was necessary to authorize a condemnation. Also, that the contract that a road should not be located in the street, was valid and binding, and if a condemnation could be had, damages sustained by the construction of the road contrary to the terms of the contract, should be allowed, and to the extent of all injury that will be sustained.