THE GEORGIA MIDLAND AND GULF RAILROAD COMPANY v. THE COLUMBUS SOUTHERN RAILWAY COMPANY.

Without first making compensation for the damages which will result therefrom, one railway company cannot lay and use its track across the track of another railway company located in a public street of a city. For this reason, if not also for others, it was error to deny the interlocutory injunction applied for. Mills, Em. Dom. §44a.; Lewis, Em. Dom. §644; Chicago & Western Ind. R. Co. v. Chicago, St. L. & P. R. Co., 15 Ill. App. Rep. 587; Lake Shore, &c. R. Co. v. Chicago, &c. R. Co., 100 Ill. 21; Chicago, &c. R. Co. v. Englewood, &c. R. Co., 115 Ill. 375.          *Judgment reversed.*

April 28, 1892. Argued at the last term.

Railroads. Damages. Eminent domain. Before Judge MARTIN. Muscogee county. At chambers, February 6, 1892.

The exception in this case is to the refusal of the injunction sought by the Georgia Midland & Gulf Railroad Company. The petition therefor alleged: The city of Columbus is petitioner's principal terminus, and by virtue of certain grants of land made petitioner it constructed there all of its side-tracks, freight-depots, shops, etc., expending large sums of money in so doing. The main track of its road connects with said terminals, which are located upon blocks 51, 52, 45 and 46 and part of blocks 54, 53, 42 and 43 on the east commons of Columbus, blocks 42 and 43 being bounded by 8th street. The main track extends northward from said terminals and out of block 42 across 8th street and thence across block 40 of the commons. After petitioner had constructed its terminals and main track, the Columbus Southern Railway Company was chartered and constructed from Columbus to Albany, its main track terminating at a point east of that of petitioner and on the east commons. Thereafter grants of land were made to the Columbus Southern, all of which are located east of the main track and lands of petitioner, and upon the grants so made the Columbus Southern constructed its terminals and connected its railway therewith, and has long since constructed its railroad and laid out its depot grounds in Columbus and connected its main track therewith. The depot grounds and terminals of the Columbus Southern are connected with the city and can be easily approached by the public in the city, and by persons travelling upon or doing business with that railway company, by several broad streets and avenues, all constantly open both for travellers and freight. A corporation known as the Columbus Railroad Company, about January 20, 1888, under

grant of right of way from the city, constructed a track west of petitioner's track and extended it west through 6th street and northward across 8th. This track is used by the Columbus Railroad Company for transfer of freight and delivery of the same to the merchants in Columbus. The Columbus Southern, for the purpose of delivering its freight cars to the Columbus Railroad Company, is about to construct a side-track from its main track, diagonally across petitioner's main track and along 8th street, to connect with the track of the Columbus Railroad Company, and has petitioned the mayor and council of Columbus for permission to lay such side-track. On an *ex parte* showing this request was granted, and the Columbus Southern is now proceeding to lay such side-track. Its action is an infringement upon petitioner's rights, is without authority of law, and the side-track is being laid as matter of convenience and economy to the Columbus Southern and regardless of petitioner's rights. A connection with the track of the Columbus Railroad Company can be made by another route and without having to cross petitioner's main track. Should said side-track be constructed the damage to petitioner will be irreparable; it will be hindered and retarded in the movement of its cars and engines along its main track to and from its depot grounds and terminals, and the risk of accidents to its property, and to travellers and freight received to be transported by petitioner, will be greatly increased, and the movement of cars and engines of the Columbus Southern and switching of trains by it along the proposed side-track, across petitioner's main track, will result in irreparable damage to petitioner. The proposed side-track is not being made for the purpose of constructing the railroad of the Columbus Southern under its charter. Petitioner is remediless unless the Columbus Southern be restrained.

Defendant demurred, upon the ground that complainant was not entitled to the relief prayed, nor to any relief either at law or in equity. The answer of defendant was : In pursuance of its charter it has constructed and operates a railroad from Columbus to Albany. It petitioned the mayor and council to lay a track from its main track across 8th street at the intersection of 9th avenue to connect its track with that of the Columbus Railroad Company, to promote the delivery of its freight, in loaded cars or otherwise, to that company, which petition has been granted, and defendant has begun laying its track. The Columbus Railroad Company is by its charter not only a street car company for transporting passengers, but also a terminal company authorized to receive freights, in loaded cars and otherwise, from the several railways converging in Columbus, and transport such freights over its line through the city streets to such points as may be most convenient to the consignees. Under defendant's charter it has a right to cross, intersect, join or unite its railroad with any other railroads heretofore or hereafter constructed, at any point in its route, with the necessary turnouts, sidings and switches, and in the exercise of such right it desires and proposes to connect its railroad with that of the Columbus Railroad Company, and as a matter of convenience and economy to itself. Being thus authorized and having obtained the consent of the mayor and council for the use of the streets, it has full authority to carry out this purpose without interference from petitioner, whose rights are not involved nor affected. The proposed track will not touch, cross or otherwise affect the right of way of petitioner, which has no right of way on either 8th street or 9th avenue, but occupies so much of these streets as are covered by its tracks under a simple easement for that purpose, granted by the city. Petitioner is not a property-holder in or upon these

streets, nor can its property rights in any way be affected by the construction of the track. The construction of the track will be a great convenience, not only to defendant, but to the merchants and citizens of Columbus and the public at large. Every other railroad company entering the city has connection with the Columbus Railroad Company's tracks, and to deny defendant this right would be inequitable and unjust. So far as any damage may accrue to petitioner from the crossing of its track, it is *damnum absque injuria;* petitioner has no exclusive right to the use of said streets or either of them, nor any right to prevent defendant's track or that of any railroad company lawfully authorized to cross its track; and the fact that it will be required to observe certain precautions when crossing defendant's track is a burden imposed by the general law, and is in no wise a damage or injury done by respondent to it. Heretofore petitioner and defendant have been jointly operated, both having used the depots of petitioner, and for this reason defendant has never constructed a depot either for passengers or freight, but it has consummated arrangements by which it has secured a warehouse on Front street between 10th and 11th, which will be used for a passenger and freight-depot. This warehouse is immediately upon the line of the Columbus Railroad, and defendant desires to connect with said railroad at the intersection of 8th street and 9th avenue for the purpose of reaching its depot, as well as for the other reasons above given. In so doing it will only cross the main line of petitioner, and under its charter it has the right to do so for the purpose of reaching its depot. This will not increase the risk of accidents to petitioner's property, for under the present arrangement petitioner's yard, situated south of the point at which defendant desires to cross petitioner's main track, is mainly used for storing cars, for the passengers over petitioner's road alight from and

v 89-14

get on petitioner's cars at the union depot, and the freight is received and delivered at petitioner's freight-depot, both points being north of the point in question. Under the present traffic arrangements the terminal facilities now used by defendant, through petitioner, cost in the neighborhood of $600 a month, and when a car-load of freight is to be handled by defendant it is first delivered to the Columbus Railroad Company, then to petitioner and by petitioner to defendant; and if defendant is permitted to cross petitioner's track it will be placed in direct communication with its own depot and can reach the same without petitioner's intervention. The point at which it is seeking to cross petitioner's track is at grade level, and under the law it has the right to cross at such a point without interference or hindrance.

Upon the hearing there was testimony for the petitioner as follows: Petitioner constructed its depot, round houses, etc. on the depot grounds, and has been in peaceful occupation of the same since February, 1887, and its main track extends thence northward across 8th street as described in the petition. The lands for terminals of defendant with its depot site, side-tracks, etc., lie east of petitioner's property and were entered upon by defendant about 1889. The Columbus Railroad Company constructed its track along 6th street about January, 1888, with permission of the city council, and under contract with petitioner. Defendant's main track is entirely east of that of petitioner, and enters Columbus at its terminus in Columbus, the final northern terminus of defendant in Columbus. From the completion of defendant's road until January, 1891, it was operated under a separate management and independently of petitioner, and during that time no attempt was ever made to cross petitioner's main track or grounds by any side-track extending westward, nor was any request so

made. During 1891 the two roads were operated under a traffic contract under one management, but it is not true that the connection now sought to be made has never been made because petitioner operated defendant's road. No effort has ever heretofore been made to make the proposed connection which, if constructed by defendant, will work incalculable damage to petitioner's property. The point at which the side-track is proposed to be constructed is just north of petitioner's depot grounds, and the travel and entrance to petitioner's grounds is along this point. Its traffic of every sort passes over this point, and the damage, delay, hindrance, inconvenience and risk of accidents will be greatly increased. The Columbus Railroad Company is operated as a transfer line only for freight, over that part of the line sought to be connected with, and the object of connection by defendant is not for transporting freight and passengers on its line of railroad, but simply as a matter of convenience and economy in handling freight. Defendant has long since completed its road into Columbus, and the proposed side-track is no part of the necessary construction of this railroad. Defendant's grounds extend as far south as those of petitioner, and it is perfectly practicable for defendant to connect its line with the Columbus railroad, either south of or in some direction from petitioner's grounds other than the route now sought. If the proposed side-track is built it will require stoppage of every train and engine that has to cross it, and thereby entail great loss to petitioner by wear and tear of machinery and loss of time, and will hinder, delay and obstruct the business of petitioner. A connection can be made between defendant's road and that of the Columbus Railroad Company by a route different from the one proposed, and in such a way as not to cross the main track or any of the tracks of petitioner, and if such connection is made all

damage to petitioner and all the risk, etc. resulting from the proposed side-track will be avoided. The connection can be made by another and better route, and could be made at the lower end of the grounds, west and south of the tracks of petitioner's road and out, into and up 6th avenue, so as to connect with the Columbus railroad track. It is about three hundred feet from the point on 8th street where the proposed side-track is sought to be made, across petitioner's main track to where the switch tracks begin to diverge from petitioner's main track. Most of the switching of cars about petitioner's business is done over this three hundred feet. Almost every engine and train of cars has to enter and back out of the yard along this distance from one side-track to another, and every engine would have to stop and start at this proposed crossing, which would entail heavy money loss to petitioner, in time of employees, wear and tear of machinery and consumption of coal. Even a crossing a few hundred feet north of 8th street would greatly lessen the damage which would result from the proposed crossing. The crossing that could be made south of petitioner's grounds would be on grade level, and a crossing above 8th street would be very nearly on grade level—about four feet embankment. It is not true that petitioner's grounds below 8th street are used mainly for storage of cars. All the shops, turn-tables, etc. of petitioner, save an uptown freight-house, are located on said grounds, its entire freight business is done there, all trains are made up there, all shop work done there and all drilling and switching of trains. The union depot was used by both petitioner and defendent as a passenger-depot during 1891. It is not true that passenger-trains going northward leave 6th avenue. All petitioner's business is done and all its trains are made up on its grounds and switched northward towards and across 8th street from

its grounds and thence back, and any car or train to get into 6th avenue must run out of petitioner's yard and be switched into that avenue. The track on that avenue is the only side-track of petitioner and is only used for transporting such freight as may be destined for petitioner's uptown depot. The only main track of petitioner crosses at 8th street.

For the defendant the following was in evidence : Defendant has no depot building in Columbus, because for quite a while it was operated jointly with petitioner, and the depot buildings of the latter were used by it. The proposed crossing would be on grade level. Its object was because it would be a great convenience for defendant to connect with the Columbus Railroad Company and thus deliver its freight on this line, and also because defendant desired terminal facilities for its road at Columbus, and to this end rented the warehouse on Front street and will use it for a freight and passenger depot. This warehouse is immediately upon the line of the Columbus Railroad Company and the latter will be used for defendant to reach its depot. The connection sought at the point selected could be made with little trouble. Most of the freight is delivered to citizens of Columbus over the Columbus railroad, and heretofore considerable portions of the freight handled by defendant had to be thus delivered, through or across the switch of petitioner and at considerable cost to defendant, because it had to pay $2 a car to the Columbus Railroad Company and the same amount to petitioner. Under the arrangement now made, defendant will save the cost of handling the cars by petitioner as well as the cost and charges made by petitioner; defendant will save about $350 a month, besides the great delay and trouble. Petitioner and the other roads entering Columbus connect with the Columbus Railroad Company as a means of delivery for freight. In making the con-

nection sought, defendant will not injure any one or
incur damage to personal property, and the only loss to
petitioner will be in not handling defendant's cars.
Under the present arrangement the handling of freight
is unsatisfactory and inconvenient, outside of cost.   If
defendant can make the crossing it can transfer its own
freight directly to its own freight-depot and distribute
freight from there, which will be a great convenience to
the public.   The connection sought is the most direct
and accessible defendant can select.   The main tracks of
the two roads are near each other where they cross 8th
street, and about one hundred feet below this point
there is a switch connecting the two roads.   About one
hundred feet south of that switch is another used mainly
for switching purposes in petitioner's yard.   Eight or
nine hundred feet below this petitioner taps the Colum-
bus Railroad Company's track.   The crossing proposed
at grade level will not seriously interfere with petitioner,
for it will be at a point where it will not interfere with
switching or anything of the kind, and the only incon-
venience that will result is that it will cause petitioner's
engines and cars to stop momentarily as they approach
the crossing.   Petitioner uses the union depot for de-
livery and reception of passengers.   In going north-
ward the passenger-trains leave petitioner's yard at 6th
avenue and run northward beyond the union depot,
thence back into that depot and thence northward out of
6th avenue on to its main line over the R. & D. tracks.
In coming south the passenger-trains follow the side-
track for its main line, cross 15th street to 6th avenue,
then to the depot and are then carried empty down 6th
avenue to its yards.   Petitioner's regular freight-depot
is immediately north of the union depot.   At this point
it receives and delivers freight, and in doing this its
freight-trains will only cross the intersection of 8th
street and 9th avenue once, and the passenger-trains

will not cross at that point at all, and after the freight-trains reach petitioner's yard they are switched to 6th avenue and thence northward until the freight-depot is reached. In doing this both passenger and freight trains cross the dummy, M. & G. railroad and the street car line.

GOETCHIUS & CHAPPELL, for plaintiff, cited Acts 1884-5, p. 260; Acts 1886, p. 194; Code, §§5024, 5027; 74 *Ga.* 659; 93 Pa. St. 150, 159; 19 *Id.* 211, 218; 52 *Id.* 506; 1 Lacey's Dig. 24, 119; 54 Barb. 388; 30 How. Pr. 39; 32 *Id.* 193; 118 Mass. 391, 561; 78 *Ga.* 271, 804; 46 *Ga.* 43; 71 *Ga.* 240; 81 *Ga.* 461; 66 Ill. 174; 81 Ill. 523; 24 Am. Rep. 545, 551; 21 Vt. 590; 6 How. 507; 8 *Id.* 560; 13 *Id.* 71.

W. A. WIMBISH and WORRILL & LITTLE, for defendant, cited Acts 1886, p. 195; 14 Gray, 155; 82 *Ga.* 320; 85 *Ga.* 26.