THE MAYOR AND COUNCIL OF MACON *vs.* THE EAST TENNESSEE, VIRGINIA AND GEORGIA RAILWAY COMPANY.

1. Where a statute granting to a railroad company part of the public domain of a city provides in effect that the grant shall not be operative without the assent of the municipal authorities, and that the terms, conditions and limitations of the grant shall be matter of agreement between said authorities and the company, and where on application of the company to the city for its consent, the municipal authorities lay down terms, conditions or limitations, and there is not some writing executed by the company, accepting or assenting to the same, the question of acceptance of the grant by the company is one of fact for decision by a jury.

2. If the company did accept the grant with the limitation put on it by the city in giving its consent, namely, for so long as the property should be used for railroad purposes as specified in the statute, the property, if not appropriated to any of these purposes within a reasonable time, would cease to be affected by the statute, and would again be the public domain of the city just as it was before, there being no consideration for the grant save the local benefits which might be expected to result from the use of the premises in the manner contemplated.

3. If the grant was accepted but terminated or became subject to be terminated by reason of non-user, the proper party to re-enter or bring suit for the premises was not the State but the city, whether the limitation to the uses expressed be regarded as a special limitation strictly, or only as a condition subsequent.

   September 16, 1889.

Statutes. Railroads. Municipal corporations. Contracts. Practice. Limitations. Consideration. Parties. Conditions. Before Judge GUSTIN. Bibb superior court. May term, 1888.

On July 15th, 1886, the mayor, etc. brought their action of complaint for certain land, against the railway

company.    The defendant pleaded prescription for twenty years, and for seven years under written evidence of title.

On the trial, the plaintiff introduced an act of the legislature of December 23, 1826, (acts 1826, p. 168,) by which the land in question, with certain other lands, was granted to it, with a proviso that if it should sell, alien or encumber such land or any part of it, the portion so aliened or encumbered should revert to the State, and an additional proviso that the State might resume the land.    Also an act of March 6, 1856, (acts 1855–56, p. 495,) confirmatory of the act of 1826, which is recited as having vested the land for the time being in the plaintiff, and granting the land without any other condition than the proviso as to sale, lease or alienation. Also an act approved December 8, 1866, (acts 1866, p. 189,) by which, in consideration of the payment of $10,000, to be appropriated to the Georgia State Orphans' Home by the City Council of Macon within twelve months after the passage of the act, the entire title to the land mentioned was vested in the plaintiff, without condition.—The defendant introduced an act approved April 16, 1863, (acts 1862–3, p. 225,) by which it was provided that the State granted to the Macon and Brunswick Railroad Company and the Milledgeville Railroad Company ten acres each out of the lands known as the Macon reserve, to be used by these companies for shops, depots and other conveniences and fixtures necessary for said companies (the assent of the city council being first had thereto), upon such terms, conditions and limitations as should be agreed upon by the council and the companies.

The plaintiff showed that the $10,000 referred to in the act of 1866 was paid by it to the State within the time required.    On February 1, 1866, the Macon &

Brunswick and the Macon & Augusta Railroad Compa-
nies, by petition to tne mayor and council, called atten-
tion to the acts oi 1863, and asked the assent of the city
to the grant that the ten acres be set apart to each of
them (attaching a map of the particular parts they de-
sired so set apart), and for certain other privileges not
necessary to mention.  On March 20, 1866, the mayor
and council adopted the report of a special committee,
to whom this petition had been referred, in which re-
port it was stated that the lands asked for should be
granted so long as the premises are used by the compa-
nies for the purposes set forth in the act of the legisla-
ture.  The land in dispute is the ten acres to which the
report of the committee applied.

The evidence tended to show that the Macon & Bruns-
wick never had the property enclosed, never erected
any structures upon it, and apparently never used it,
not even having a track across it.  The defendant has
some tracks over it, but has put it to no other use save
to enclose a part, which it rents out for a cow pasture.
It has been recognized by the city authorities as the
property granted to the Macon & Brunswick, not by
any specific act of the mayor and council, but by what
seems to have been the understanding of some of the
city officials, and by the fact that on the map of the
city, known as Boardman's map (made in 1872), which,
though not officially accepted by the city, was the map
generally used by these officials, the land is marked as
that of the Macon & Brunswick railroad.  The Macon
& Brunswick, as originally organized, was insolvent;
and possibly for that reason no steps were taken to im-
prove the property.  About July, 1886, the defendant
contemplated the erection of a round-house upon it,
having already erected structures and made other im-
provements of the railroad property, not on this land,

but which were more pressing than the erection of a round-house and very expensive.    The witness who testified as to this contemplated round-house, thought this work was in contemplation before the city filed this suit, but if so, not long before.    Nothing seems to have been done in carrying out the idea, except the drawing up of a rough plan without dimensions and without estimate of cost.

On July 2, 1873, the governor of Georgia issued his proclamation seizing "all the property" of the Macon & Brunswick, because of a failure by that company to pay the interest on its bonds which had been indorsed by the State.    On April 5, 1875, by executive order, the governor directed that all the property so seized be sold to the highest bidder on the first Tuesday in June, 1875 ; and that the receiver who held the road for the State should make out an advertisement under this order, setting forth with requisite particularity all the property to be sold, and publish the same, etc. The advertisement made under this order was dated April 7, 1875, and so far as it could be held to cover the property in dispute, advertised for sale all the railroad track, "together with the privileges, equipments and other property of said company, consisting of its roadbed superstructure, right of way, motive power, rolling-stock, depots, freight and section houses, machine shops, carpenter shops, grounds, furniture, . . . . " By deed dated June 3, 1875, the foregoing executive order and advertisement were recited ; also that the property was exposed for sale and knocked off to the State of Georgia as the highest and best bidder.    It is made by James M. Smith, governor, and in consideration of the premises conveys all the lands, rights, property and effects thereinbefore mentioned, to the State of Georgia.    On February 28, 1880, the then governor, reciting

the foregoing seizure, advertisement and sale, and using in the instrument the general words, "grounds, lands," etc., leased the property which had been conveyed to the State to a new corporation known as the Macon and Brunswick Railroad Company; and on the same day, the property thus leased was sold to it and conveyed by deed executed by the governor. On November 4, 1881, the Macon & Brunswick conveyed all its property, rights, franchises, etc. to the Cincinnati & Georgia Railroad Company; and on December 20, 1881, the Cincinnati & Georgia conveyed its property of every kind to the East Tennessee, Virginia and Georgia Railroad Company.

The defendant introduced a decree and record from the Circuit Court of the United States for the eastern district of Tennessee, in the case of the Central Trust Company of New York *vs.* The East Tennessee, Virginia & Georgia Railroad Company, foreclosing the first mortgage lien on that railroad and its property and franchises, etc., wherever found; and an ancillary decree from the same court for the northern and southern districts of Georgia, ratifying and confirming the original decree, and directing the sale of the road and property, including the portion lying in Georgia, at public outcry. Also the report of the officer of said court as to the sale, which was made to Allcock, McGhee, Flemming and others and confirmed by decree January 28, 1886. The road was in the hands of a receiver from January 10, 1885, to July 30, 1886. Defendant also introduced the certificate of incorporation of the purchasers named and their associates, under the name of the East Tennessee, Virginia and Georgia Railway Company. Also a quit-claim deed from the Central Trust Company of New York, to which the above mentioned mortgage had been executed by the

East Tennessee, Virginia & Georgia Railroad Company, to the East Tennessee, Virginia & Georgia Railway Company. Some other documentary evidence was introduced, but it does not seem material to be reported.

It was shown that the Macon & Brunswick road was completed from Macon to Brunswick in the latter part of 1869. Also that, a short time after the sale of the old East Tennessee, Virginia and Georgia road, one of the attorneys of the new company personally and by letter called the attention of the mayor of Macon to the contract between the city and the Macon & Brunswick, and stated the readiness of the new company to sign it; and that the mayor said he would get the attorney for the city to draw up a contract and present it; that he was applied to again and said the attorney had failed to do it, and that is where the matter stands now; and that this was done a short time before the sale of the road, and "it had been continuous."

The jury found for the defendant. The plaintiff moved for a new trial on various grounds, the nature of which, so far as material, is sufficiently indicated in the opinion. The motion was overruled, and the plaintiff excepted.

C. L BARTLETT, R. W. PATTERSON and HILL & HARRIS, for plaintiff.

BACON & RUTHERFORD, for defendant.

BLECKLEY, Chief Justice.

As the court below restricted the functions of the jury to the single question of identity of the premises in dispute, we shall deal with the case and discuss it only far enough to show that this restriction was erroneous. We think two additional questions were for determina-

tion by the jury, the first being whether the Macon & Brunswick Railroad Company accepted the grant made to it by the State in conjunction with the city of Macon; and the second whether if it did, that the company or its successor, the East Tennessee, Virginia & Georgia Railway Company, lost the grant by failure to devote the property, within a reasonable time, to the objects and purposes for which it was acquired.

1. At the time the act of 1863 (acts 1863, p. 225) was passed, the title to the Macon reserve was not in the State, but was in the corporate authorities of the city of Macon; the same having passed out of the State by the act of 1856. (Acts 1855–6, p. 495.) It was not the purpose of the act of 1863 to grant to the Macon & Brunswick company a donation or gratuity; for the act was not passed by the General Assembly in the method prescribed touching donations by the constitution of 1861. (Code of 1863, §4948.) Had it been so passed, the yeas and nays would have been entered on the journals of each house. (*Id.* §4940.) We have examined these journals, (House, p. 167; Senate, p. 146,) and find that the yeas and nays were not so entered. The act may well be construed, therefore, (since by its own terms it would have no force without the assent of the city council of Macon) as a conveyance from that municipality to the railroad company, made in consideration of local benefits to the city expected to be derived from the use of the property in the manner contemplated by the act. The preceding act of 1856 expressly disabled the city to aliene or even to offer to sell, aliene or convey. The act of 1863 took off this restriction as to the premises to which the latter act applied. Perhaps the most accurate view would be to treat the act as a joint grant made by the State and city, the title to the property at that time being in the city, and the

city's assent to the grant being expressly required.
The language of the act, including the caption thereto,
is as follows:

> "An act to grant the use of certain grounds in the Macon Reserve
> to the Macon and Brunswick Railroad Company, and the Milledge-
> ville Railroad Company, for depot purposes, with the consent of the
> city of Macon.
>
> "Section I. Be it enacted by the General Assembly of the State
> of Georgia, that the State of Georgia will, and hereby does, grant to
> the Macon and Brunswick Railroad Company, and the Milledgeville
> Railroad Company, ten acres each, out of the lands belonging to what
> is known as the Macon Reserve, to be used by said railroad compa-
> nies for depots, shops and other conveniences and fixtures necessary
> for said railroad companies (the assent of the city council of Macon
> being first had thereto), upon such terms, conditions and limitations
> as shall be agreed upon between the city council of Macon and said
> railroad companies.
>
> "Sec. II. Repeals conflicting laws."

It will be seen that the "terms, conditions and limita-
tions" were left to be agreed upon between the city
council and the railroad company. Of course, there-
fore, no title whatever passed to the company by mere
force of the act itself. It follows that whether any
terms, conditions and limitations were agreed upon,
and if so what these were, must be determined as a
preliminary for holding that the company acquired any
interest in the land; and surely these matters cannot
be adjudicated as pure questions of law, but are in
large degree questions of fact, depending upon what
took place between the city council and the company,
and upon subsequent conduct, as shown by the evi-
dence both written and unwritten. If enough ap-
peared in the documents to form the basis of a conclu-
sive legal presumption that the company accepted the
grant upon the terms, conditions and limitations laid
down in the report of the committee which the city
council adopted, then the aid of the jury upon this part
of the case could be dispensed with; but no writing

appears in the record which shows that the company ever agreed to the terms, conditions and limitations proposed by the city council. Without such agreement, either express or implied, what the legislature did, and what the city council did, would be of no avail, since by the provisions of the act, some agreement between the council and the company was absolutely essential. Admitting that it would follow from the fact that the action of council was in response to a petition made to it by the company, that the company's acceptance might be presumed, yet this presumption would not be conclusive; it would only be *prima facie*, and might be overcome by circumstances tending to show that the company did not accept; such, for instance, as that it never took possession of the premises or exercised dominion over them, and delayed for an unreasonable time appropriating them to the use contemplated by the grant. It would be extremely harsh and arbitrary logic to infer, with the force of a conclusive presumption, that because the company invited the city to consent, it thereby gave the city a *carte-blanche* to fix any terms, conditions or limitations it might choose to impose.

2. There can be no doubt that if the Macon & Brunswick company accepted the grant on the terms fixed by the city council of Macon (and it could accept on no other), it was with the limitation that the estate acquired was to exist only so long as the property was used for the purposes specified in the act. Such a limitation is distinguished from an ordinary condition subsequent, inasmuch as it marks the limit or boundary beyond which the estate conveyed could not continue to exist. 2 Black. Com. 155-6; 2 Minor's Inst. 263; 2 Washb. Real Prop. 23-5 (*457-9); Smith on Exec. Interests, §§34-42; 2 Kent Com. 129; Henderson *vs.*

Hunter, 59 Pa. St. 335; Ashley *vs.* Warner, 11 Gray, 43. Were the mode of use, however, not a special or collateral limitation, as we consider it, but a condition subsequent, the use would have to be begun within a reasonable time in order to save the estate from forfeiture. Haden *vs.* Inhab. of Stoughton, 5 Pick. 528; Allen *vs.* Howe, 105 Mass. 241; Hamilton *vs.* Elliott, 5 Sgt. & Rawle, 374. According to some authorities, a grant made for a charitable use is not forfeited by nonuser. McKissick *vs.* Pickle, 16 Pa. St. 140; Pickle *vs.* McKissick, 21 *Id.* 232. Here there was no charitable motive or object involved; and as we have seen, the grant was not made by the General Assembly as a donation or gratuity. Nor can we suppose that it was intended as such by the municipal authorities of Macon. Nothing was paid for it directly by the company, and no consideration is expressly mentioned in the documents relating to it; but there can be no doubt that local benefits were in contemplation, which benefits could be realized only by the use of the property in the manner specified. As long as the company held it with a view to improve and use it in that manner, the holding was not inconsistent with the terms of the grant; but after the lapse of a reasonable time, under all the circumstances, for the actual use to commence, if it did not commence the company's estate was terminated *ipso facto*, if the words relating to the use be construed as a limitation, and if construed as a condition subsequent, the estate was forfeited, or became subject to forfeiture upon entry made or action brought in behalf of the proper party. In some jurisdictions, the question of reasonable time seems to be for decision by the courts; but under our system, where, as in this case, some of the facts bearing upon the case are not evidenced by writing, we think the solution of the question is for the

jury.   If the grant had been otherwise paid for by the
company, it might well be said that no question of
reasonable time would be involved, or if involved, that
a very remote time would be reasonable.   But any and
all other considerations being wanting, it results that a
period of time reasonably necessary for the purpose
under all the circumstances, must have been in contem-
plation; for otherwise the property might have gone
out of use altogether.   If the company could hold it
beyond a reasonable time without commencing the use,
it could do so for all time.  So that if reasonable time be
not the limit to non-user, there is no limit whatever.  It
follows from what has been said, that if a reasonable
time had elapsed before the assets of the Macon &
Brunswick Railroad Company were seized and sold out,
that company had lost the grant, and these premises
were not its property at the time of the sale.   But if a
reasonable time had not elapsed, the company now
claiming as its successor would be entitled to any addi-
tional time required when added to the time already
elapsed when it succeeded to the former company's
rights, to complete the period.   And if when this action
was brought the period of reasonable time was com-
plete, whether completed whilst the right was in the
former company, or not until the latter acquired it, the
present action was maintainable, provided it was
brought by the proper party.

3.  We have no doubt whatever that the proper party
to bring the action was the Mayor and Council of the
City of Macon.   The corporation had the title under
the act of 1856, save in so far as it parted with the
same under the act of 1863.   The State never has re-
sumed the title to any part of the Macon Reserve, but
on the contrary, by the act of 1866, (acts of 1866, p. 89,)
has for a consideration, to wit, $10,000, paid by the

authorities of the city of Macon, relinquished to the city council all the State's contingent interest, and vested the same in the mayor and council.   We do not cite this last act as legislation necessary to the conclusion which we have reached; for whether the title of the railroad company was terminated by limitation or by condition subsequent, the title would go back to where it was under the act of 1856; and if re-entry or suit was necessary to such a restoration of title, the proper party to re-enter or to bring suit would be the city of Macon, and not the State.

Except such matters as are involved directly or indirectly in the points we have discussed, we find no error in the record which we deem material, and we leave the new trial which must be had to take place under such light touching the law of the case as has been shed by this opinion.

Judgment reversed.