JOHN DERN, ET AL., APPELLANTS, *v.* SALT LAKE CITY RAILROAD COMPANY, ET AL., RESPOND-ENTS.

LEGISLATIVE ACTS AFFECTING STREET RAILROAD COMPANIES — NOT SELF-EXECUTING.    FRANCHISE. IS CONTRACT — GOVERNED BY SAME RULES.    WAIVER OF BREACH — STATUS OF PRIVILEGES GRANTED.    · FRANCHISE — BREACH OF CONDITION-WAIVER — STRANGERS TO CONTRACT WITHOUT RIGHT.    FORFEITURE OF FRANCHISE—MANNER OF—R. S., SEC. 438, NOT APPLICABLE.    ARTI-CLES OF INCORPORATION — WHEN MAY BE AMENDED — APPLICA-TION OF R. S., SEC. 438.

1. *Legislative Acts Affecting Street Railroad Companies—Not Self-Executing.*

    The various Legislative acts under which the defendant street railway company was incorporated, containing provisions that unless certain acts were performed within a certain time the "act of inocrporation shall be void," and being later amended by adding the words "as to all parts of its chartered lines not then constructed," it is contended that such provisions are self-executing, and that having failed to comply with the terms of the acts, defendant's rights have been forfeited. *Held* that such contention is inconsistent with plaintiff's allegation that defendant is a corporation and of no avail.

2. *Franchise is Contract—Governed by Same Rules.*

    A franchise is a contract between the State or other body grant-ing the franchise and the party accepting and acting upon it; it is governed by the general rules applicable to contracts; and either party may waive any breach of the conditions of a franchise, and anything which would constitute a waiver of a breach of a contract, constitutes a waiver of a breach of the conditions of a franchise.

3. *Waiver of Breach — Status of Privileges Granted.*

    The waiver of a breach which, if insisted upon, would forfeit the franchise or some special right under it, leaves the party

in default free to enjoy the privileges granted, until the State moves in the matter and a forfeiture has been judicially declared.

4. *Franchise — Breach of Condition — Waiver — Strangers to Contract without Right.*

   The defendant company having been in operation for a period of about twenty-seven years, and no proceedings having been instituted by either State or city to forfeit any of the rights granted by the franchises to the defendant company, and additional franchises having been repeatedly granted, all defaults on the part of the defendant company up to the date of the last franchise (March 18, 1894) have been waived, and the plaintiffs being strangers to the contract have no rights in the premises.

5. *Forfeiture of Franchise — Manner of — R. S., Sec. 438, not Applicable.*

   The act authorizing the city to grant a franchise to defendant company imposed no restriction except as to the time for which the franchise should be granted; no rights can be forfeited therefore, except for the causes and in the mode prescribed in the franchise and Section 438, R. S., is not applicable.

6. *Articles of Incorporation — When may be Amended — Application of R. S., Sec. 438.*

   There being no statutory time limit within which articles of incorporation may be amended, an amendment may be made more than ten years after filing the original articles, and in the case at bar the amendment having been made in 1889, seventeen years after filing the original articles, R. S., Sec. 438, could have no application except to the amended articles, and as to such there was no default when this action was commenced.

(Decided March 14, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Application for an injunction to prevent defendant railway company from constructing or maintaining any street-car line on South Temple Street in Salt Lake City east of

E Street, and also compelling said company to remove all
iron, ties, and other obstructions by it already placed upon
a portion of said street, and to restore said street to the
condition it was in when defendant company entered
thereon.

From a decree refusing said injunction and finding that
defendant company had a right to construct, maintain, and
operate a street railway on the street mentioned, and for
costs, plaintiff appealed.    *Affirmed.*

*Messrs. Dey & Street* and *W. H. Bramel,* for appel-
lants.    *C. F. Loofbourow, Esq.,* of counsel.

The court erred in not rendering judgment for appel-
lants for the reason that the undisputed evidence conclu-
sively shows that the Salt Lake City Railroad had forfeited
its franchise from the State to build the railroad in
question.

That the forfeiture clause in the original articles of
incorporation is self-executing, see:  Matter of Brooklyn,
etc., Ry. Co., 72 N. Y., 245; *Oakland R. R. Co. v. O.
B. etc., R. R. Co.,* 45 Cal., 365; *Brooklyn, etc., Trans.
Co. v. City,* 78 N. Y., 525; *Bywater v. Paris, etc., Ry.
Co.,* 11 S. W., 856; *Peavey v. Calais Ry. Co.,* 30 Me.,
498; *Upham Ry. Co. v. Cent. Ry. Co.,* 31 N. J. L.,
205; Thompson Corporations, Secs. 6589, 6590.

This principle is applied every day in regard to grants,
mining locations, land entries, adverse possession, etc.
*Borland v. Lewis,* 43 Cal., 569; *Upham v. Hosking,* 62
Cal., 250.

So also the following provision was held to be self-
executing:  ''Its corporate existence and powers shall
cease.''    Matter of Brooklyn, etc., 72 N. Y., 245; Mat-
ter of Brooklyn, etc., 75 N. Y., 335 ; *Farnham v. Bene-
dict,* 107 N. Y., 159.

That the Railroad Company, by laches and non-user,

forfeited and abandoned its right to build the railway on Brigham Street east of E Street, see :

*Henderson* v. *R. R. Co.*, 21 Fed., 358; *C. I. Ry. Co.* v. *M. & A. Ry, Co.*, 57 Iowa, 249; *Louisville Trust Co.*, v. *City of Cincinnati*, 70 Fed., 296–315 ; *People* v. *B. R. R. Co.*, 126 N. Y., 29.

Where a corporation is required to begin work within three years, and complete its road within ten, and nothing is done for twenty years, abandonment is presumed. *Bonapart* v. *Balt. R. R.*, 75 Md., 340 ; *Houston* v. *Houston Ry. Co.*, 84 Tex., 681; *Atchison* v. *Nave*, 38 Kan., 744; *State* v. *Ry. Co.*, 38 L. R. A., 218; *Troy, etc., Co.* v. *B. etc., Ry. Co.*, 86 N. Y., 107; *Roanoke, etc., Co.* v. *Ry. Co.*, 108 Mo., 50.

The defendant company is estopped from asserting any right in said Brigham Street, and is estopped from building a railway thereon. On the question of estoppel see *Mitchell* v. *Reed*, 9 Cal., 204; *Stevens* v. *Ludlum*, 48 N. W., 771; *Ricketts* v. *Croon*, 14 So.. 637; *Faxton* v. *Faxton*, 28 Mich., 159.

That railroad companies may lose their franchises to build their roads by being estopped from asserting the same, see : *Erie Ry. Co.* v. *Ry. Co.*, 21, N. J. Eq., 283–289; *Little Rock Ry. Co.* v. *Ry. Co.*, 36 Ark., 663.

Municipal control of street railways must be exercised for the benefit of the public and not for the benefit of private corporations. *Dooly Rapid Transit Co.*, 9 Utah 31; *People* v. *Sutter St. Ry.*, 116 Cal., 604.

Where a street is provided with sufficient street-car facilities and the building of another street-car line will cause damage to abutting owners, the building of said line will be enjoined at the suit of such owners. *Dooly* v. *Rapid Transit, Supra*

*Messrs. Pierce, Critchlow, and Barrette,* for respondent.

*Messrs. Rawlins, Thurman, Hurd, and Wedgewood* of counsel.

Questions of defect in the incorporation are matters of which only the State can take advantage.

6 Thompson corporations, Secs. 7642, 7643.

The decisions are clear that the State only can bring and prosecute such an action. *North* v. *State,* 8 N. E., 159; Cook on Stockholders, Secs. 632–634.

Until the State intervenes a private individual can not set up the forfeiture or in any way challenge the corporate existence with its full vitality. The authorities for these views are numerous and uniform both in this country and in England. *State of Louisiana* v. *Fagan,* 22 La. Ann., 545; *Bank of Niagara* v. *Johnson,* 8 Wend., 645; *People* v. *Pres. and Manhattan Co.,* 9 id., 35; Matter of N. N. Elevated R. R. Co., 70 N. Y., 327; Matter of Kings Co. Elev. R. R. Co., 105 id., 97; *Day* v. *Ogdensburg & L. C. R. R. Co.,* 107 id., 129; *Moore* v. *Brooklyn City R. R. Co.,* 108 id., 98; *Farnsworth* v. *M. & P. R. Co.,* 92 N. S., 49; *Van Wyck* v. *Knevals,* 106 id., 360.

As to the question of forfeiture by abandonment, the city is the only person who can raise the question, and it has not at any time complained. The city must complain and the State must through its proper officer bring the case to have the forfeiture declared. *Mil. Elec. Ry. & Light Co.* v. *City of Milwaukee,* 36 L. R. A., 45; *State* v. *Janesville Water Co.,* 32 L. R. A., 391; *Wright* v. *Mil. E. R. & L. Co.,* 36 L. R. A., 47.

Our point now is that neither the Railroad Company nor any other person can claim an abandonment of the

franchise obtained by the railroad company from the city, unless it can also show that this abandonment was acquiesced in by the city.    The doctrine is that a street railroad company can not surrender its franchise without the consent of the State or granting power.    It assumes a public trust and can not lay down its burden whenever it may choose to do so.    *Wright* v. *Electric Ry. Co.*, 95 Wis., 29; S. C. 69 N. W., 790; *Mylrea* v. *S. S. Ry. Co.* 67 N. M., 1140; *Railway Co.* v. *Ry. Co.*, 49 N. E., 578; *Thomas* v. *Railroad Co.*, 101 U. S., 83; *Y. & M. Ry. Co.* v. *Winans*, 17 How., U. S., 31.

The second and conclusive answer to the point made by appellants that the present railroad facilities are ample and sufficient for all parts of the street in question, is the fact, if it be a fact, that other railroads furnish ample facilities for travel on the street in question, is no concern of the courts.    The care and disposition of the public streets is left to the city council, and no court has been given any control over the discretion lodged in that body. *State* v. *Mayor of Jersey City*, 26 L. R. A., 281; *Silsby* v. *Lyle*, 75 N. W. Rep., 886.

BASKIN, J.

In this action the relief sought by plaintiffs is a decree perpetually enjoining the defendant railroad company from constructing or maintaining any street car line upon South Temple Street, in Salt Lake City, east of E Street, and also compelling said company to remove all of the iron, ties, and other obstructions by it placed upon said portion of said street, and to restore said street to the condition it was in, when defendant company commenced to construct a street railway thereon.

Upon the trial, the lower court refused to grant an injunction, and adjudged and decreed that the defendant com-

pany had the right to construct, maintain, and operate a street railroad on that portion of South Temple Street east of E street, and that said company recover its costs from plaintiffs. Plaintiffs appeal from this final decree, to this court.

Plaintiffs claim that the defendant company has no right to construct or operate a street railroad on said portion of said street, and said defendant asserts that it has such right.

The complaint alleges "that the defendant company is a corporation organized under the laws of Utah, in the year 1872, for the purpose of constructing, owning, maintaining, and operating a street railroad for carrying passengers within the corporate limits of Salt Lake City."

Plaintiffs' counsel, in their brief, say, "In the case at bar the life of the corporation is not at stake. Only its right to build on a small portion of one street is at issue."

On the 30th day of January, 1878, the defendant company amended its original articles of incorporation, by substituting instead of the route of the road, designated in the original articles, a route over certain designated streets, which did not include any portion of South Temple Street east of E Street. On the 20th day of February, 1889, it again amended its articles of incorporation so as to include each of all the streets in Salt Lake City to the full extent and within the terminal limits thereof. The articles thus amended include all of that portion of South Temple Street east of E Street.

The act under which said defendant company was incorporated, and which was in force when the first amendment of the articles of incorporation, before referred to, was made, authorized any company organized under said act to amend its articles of association by altering the route or

changing the termini of its railroad.   (See Comp. Laws 1876, p. 206, Sec. 9.)

At the time the second amendment of the articles of incorporation was made Sec. 2323, Comp. Laws of 1888, authorized such articles of association to be amended so as to include new lines of route, alter the route, and change the termini of the railroad.

Sec. 434 of the Rev. Stat. provides that, "Any amendment of the articles of incorporation adding new lines of route, altering the original route, or changing the termini, shall not be deemed unlawful as an alteration of the original purpose of the corporation."

On April 26, 1873, the City Council, by resolution, granted to the defendant corporation the right to construct and operate a street railroad on certain streets in the city, in said resolution named.   On the 6th day of January, 1876, by resolution, the City Council granted to the defendant company the right to construct and operate a single- or double-track street railroad on certain streets therein named, and also on such other streets within the corporate limits as should thereafter need a street railroad. On Feb. 26, 1889, the City Council, by resolution, granted to said defendant company the right to construct and operate a branch line of street railroad over certain streets therein named, and among which was South Temple Street to the Fort Douglas reservation, which is a considerable distance east of E Street.   Other franchises, which are mentioned in the section of the city ordinance, hereinafter set out, were by resolution granted to the defendant company.

O. P. Arnold was placed upon the witness stand by plaintiffs, and testified as follows: "I have been employed by the street-car company off and on for quite a number of years.; I date back to 1873; was superintendent

for quite a number or years—as near as I can remember, until 1889, when I was displaced. The Salt Lake City Railroad Company constructed its first car line on Brigham Street up as far as E Street in 1874, as near as I can remember; that the road went north on E Street, or Fir Street, as it was then called, three squares north, and then turned east on the street known as Third Street—that was formerly Bluff Street. They built a little farther on so many times that I can not give you any dates. As early as 1874, it was built up to the 20th ward store, but I think it was the next year when we constructed again. In 1875 we constructed up E Street three blocks— short blocks—about twenty rods each, and went easterly, and from time to time that has been extended until it now runs out to what they call Q or S Street. The street-car line was first constructed on First South Street in 1873, nearly out to the military reservation. These lines that I have referred to have been maintained and operated ever since. No line has been constructed on South Temple Street east of E Street up to the present time."

From this evidence, the allegations of the complaint, and the statement in plaintiffs' brief that "In the case at bar the life of the corporation is not at stake. Only its right to build on a small portion of one street is at issue," it appears, and is not questioned, that the defendant is, and has been ever since its incorporation in 1872, a corporation; that as early as 1873 it had constructed a street-car line on First South Street nearly out to the military reservation, and that since then it constructed other street-car lines, and that these lines have been maintained and operated by the defendant company ever since. Its right to do so has never been called in question, either by the Territory, State, or city. In the light of these facts, the

following acts of the Territorial Legislature and the ordinance of the city council have an important bearing on the question under consideration :

Sec. 31, Chap. 4, Comp. Laws 1888, provided that the city council may permit, regulate, or prohibit any construction or laying of track of any railroad or tramway, in any street, alley, or public place; but such permission shall not be for a longer time than twenty years. The act containing this provision was passed March 8, 1888. This section was amended March 10, 1892 (see Sess. Laws of that year, p. 72), by increasing the time to twenty-five years, and again on March 8, 1894, to fifty years (see Sess. Laws of that year, p. 60). In ten days after the last amendment, to wit, on the 18th day of March, under the authority conferred by said act, as amended, the city council passed an ordinance, containing among others, the following provisions:

" *Whereas*, The Salt Lake City Railroad Company is the owner of certain lines of street railway in the city of Salt Lake, and is and has been engaged in the operation of the same under and by virtue of certain resolutions and ordinances hereinafter more particularly described; and

" *Whereas*, Questions have heretofore arisen between the city and said railroad company, respecting the duties and obligations of said company as to the payment of license-tax and the paving and repaving of the streets upon which said lines of railroad are constructed; and

" *Whereas*, The said company has heretofore requested this council to grant to it an extension of the rights and privileges by it had and enjoyed under said resolutions and ordinances;

" Now, therefore, for the purpose of determining the questions which have arisen between the city and said company as aforesaid, and of fixing the liability and duties of said company in the premises,

" Be it ordained, by the mayor and city council of Salt Lake City, as follows, to wit:

" Section 1. That certain resolutions heretofore passed and adopted by the mayor and city council of Salt Lake City, granting rights and privileges for the construction and operation of a line or lines of street railway upon the streets of Salt Lake City, to-wit:

" Resolutions granting franchises to the Salt Lake City Railroad Company, passed and adopted February 26, 1889; February 11, 1890; May 20, 1890; September 23, 1890; May 5, 1891; September 8, 1891; November 24, 1891; and resolutions granting a franchise to L. C. Hamilton, passed and adopted January 20, 1891, be and each of them is amended by striking out from said Section 2 of each of said resolutions the words ' of twenty (20) years from the date of the passage of this resolution,' and substituting in lieu thereof the words ' of fifty (50) years from January 1, A. D. 1894.' * * *

" Sec. 3. That the resolutions mentioned in Section 1 of this ordinance be and the same are hereby amended by inserting therein the following provisions, to wit:

"Said company shall be required to pave or repave, at its own expense and cost, all space between its different rails or tracks, and also a space two feet wide on the outside of the rails of the outside tracks, and the tracks herein referred to shall include not only the main tracks but also all side-track, crossings, and turn-outs used by said company. Such paving or repaving by the said railroad company shall be at the same time, and shall be of the same material and character as are proper for the repaving of the streets or alleys on which said railroad track or tracks are paved and located, unless other material be specially ordered by the board of public works. Provided that where the said company has double tracks

on the same street, and it be required, for the accommodation of some other corporation or person, to lay its tracks a greater distance apart than it would be required to do but for the accommodation of such other corporation or person, then in that event the said railroad company shall not be liable for or required to pave such additional distance.

" Sec. 4. The price of a single passage within the city limits shall not exceed five cents, and no charge shall be made in excess thereof excepting where the passage or some portion thereof shall be over any part of the line of the grantee lying within the limits of Fort Douglas military reservation, so long as said reservation shall exist, and in case its boundaries shall hereafter be reduced in area, the above exception shall apply only to such area.  * * *

" Sec. 7. That all ordinances, resolutions, and parts thereof in conflict with the provisions of this ordinance, are hereby repealed, and the resolutions mentioned in Section 1 of this ordinance, amended as herein provided, are hereby re-enacted and made operative from the date of the passage of this ordinance. "

The franchise granted to the defendant company, by the resolution of February 26, 1889, referred to in said ordinance, authorized said defendant to construct and operate a street railroad on that portion of South Temple Street east of E Street.   Said resolution was amended, and as amended re-enacted by said ordinance, and as amended made operative from the date of the passage of said ordinance.   Said ordinance imposed new and onerous duties and conditions upon the defendant company.   For instance, said resolution before its amendment imposed no obligation upon the defendant company to do the paving which said ordinance requires to be done by said

defendant. The defendant, before the passage of said ordinance, could collect from each passenger on its cars ten cents fare. Under said ordinance it can not collect more than five cents. It appears from the face of said ordinance, as well as from the evidence, that there existed a dispute between the city and the defendant company regarding an alleged obligation of said company to pay a license tax, to pave and repave the streets upon which its lines of railroad were constructed, and to pay the city the amount expended by said city for paving already laid between and along certain portions of the street-car track of said defendant within the paved district, and that said dispute was settled by the passage of said ordinance, and the execution and delivery by the defendant corporation to said city, on the day of the passage of said ordinance, of four promissory notes, guaranteed by A. W. Mc Cune, Francis Armstrong, and R. C. Chambers, in the aggregate amounting to $35,000.00, payable at different dates, with six per cent interest per annum. The settlement of this dispute, the obligations for the payment of said sum of money, the new and onerous conditions imposed upon the defendant corporation, and the extension of its franchise for fifty years, constituted the mutual consideration, moving from its respective parties, which induced the passage of said ordinance.

Under the foregoing undisputed facts there is no doubt but that said ordinance conferred upon the defendant company the right to construct, maintain, and operate on the portion of South Temple Street east of E Street, a street railroad, and that that right still exists unless since the passage of the act of the legislature of March 8, 1894, and the said ordinance of the city, it has been terminated.

No track was laid on South Temple Street east of E Street during the period of time, between the date of the

incorporation in 1872, of the defendant company, up to the time of the passage of said ordinance in 1894 ; nor since the latter date until about August 16, 1898, at which time the defendant company began the construction of a street railroad track on said portion of said street. On that day this suit was instituted, and the defendant company was enjoined by an order of the lower court from proceeding further in the construction of said track until the final trial of the case.

By the act under which the railroad company was incorporated, it is provided (Comp. Laws 1876, Sec. 502, p. 217), "If such railroad company shall not within two years after the filing of its original articles of association, begin the construction of its road, and expend thereon at least five per cent of the amount of its capital stock, and finish the road and put the same in full operation within six years, its act of incorporation shall be void."

Sec. 2358 Comp. Laws of 1888, which was enacted in 1884, is as follows :

"If such railroad company shall not within two years after the filing of its original articles of association begin the construction of its road and expend thereon at least five per cent of the amount of its capital stock, and finish the road and put the same in full operation within ten years, its act of incorporation shall be void." In 1892, this section was amended by adding at the end of the same, the following words : "As to all parts of its chartered lines not then constructed."

Plaintiffs' counsel claim that these provisions of the statute are self-executing ; that the defendants' right to construct a street railroad on South Temple Street, east of E street, had been forfeited, and that appellants may avail themselves of such forfeiture.

It has already been shown that plaintiffs admit that the defendant is a corporation and has been ever since its incorporation in 1872. If counsels claim that said provisions are self-executing, then under the first two just quoted, the defendant company has no corporate existence, and can not therefore do any act, nor can it be sued or defend against a suit, for the penalty imposed by said provisions is that the act of incorporation shall be void. Such a result is not consistent with the acts of plaintiffs instituting this suit, or with the allegations of the complaint and declarations of counsel in their brief, before quoted.

In the case of *Dartmouth College* v. *Woodward*, 4 Wheat, 518, Chief Justice Marshall announced the rule which has been universally accepted in this country as correct, that a franchise granted by a State when accepted and acted upon, is a contract between the State and the party accepting and acting upon it. This being so no reason exists why such a contract should not be governed by the general rules which apply to other contracts. Each party to a contract may waive any breach of the same, and we are of the opinion that the State, or anybody granting the franchise, may likewise waive any breach of the conditions of the same, for the State or body granting the franchise is under no legal obligation to insist upon a forfeiture, and when to do so would not result in any benefit, but in injury, no good reason can be assigned why the right to waive the forfeiture should not exist. Anything which constitutes a waiver of a breach of a contract should constitute a waiver of a breach of the conditions of a franchise. The waiver of a breach which, if insisted upon, would forfeit the franchise or some special right under the same, of necessity must leave the party in default free to enjoy the privileges granted by the franchise.

Does the record in this case show a waiver by the Territory, State, or city ?

The defendant company began soon after its organization, in 1872, under its articles of incorporation and franchises granted by the city, to construct and operate its road, and from time to time thereafter as it amended its articles in pursuance of the statutes authorizing the same to be done, and was granted additional franchises by the city, it continued to extend its railroad in the city, and operated the same up to the present time. During the whole of that long period of about twenty-seven years, no objection has been made, either by the Territory, city, or State, and no legal proceedings have been instituted to interfere with the defendant's operations, until the present suit. The State could have intervened in this suit and assisted the plaintiff in obtaining an injunction if it desired to enforce a forfeiture of any of the rights of the defendant corporation, under its charter and city franchises. The city was made a party to the suit, but it does not, as it could have done if it so desired, join with the plaintiffs in the effort to obtain an injunction to stop the defendant. In place of actually participating in the suit, it entered into a stipulation with plaintiffs that the city was only a nominal party to the suit, and that no costs of any kind should be taxed against it.

The failure, for so long a time, to institute legal proceedings to forfeit any of the rights granted by the franchises of the defendant company, and the repeated granting to it of additional franchises, is a waiver of all defaults on the part of the defendant company up to March 18, 1894, the date of the last franchise to the defendant.

The franchises of the defendant company, having been accepted and acted upon, are valid and binding contracts between it and the sovereignty which authorized the

granting of said franchises, and the city which granted the same in pursuance of said authority; and as the defaults of the defendant company up to the 18th day of March, 1894, have been waived by the State and city, the plaintiffs, being strangers to the contract, have no right whatever to prevent the defendant from exercising all of the rights granted to it by said franchises. Until the State or city shall move in the matter and obtain a decree of court restraining the defendant company, it has the right to enjoy all the privileges granted by its charter and franchises.

In the case of the People ex rel. v. Oakland County Bank, 1 Doug. (Mich.), 282, the following doctrine is announced :

" Where, in an act of incorporation, it was provided that the same should be void, unless a certain sum of money was paid in, as part of the capital stock of the corporation, within two years from its passage, it was held, that, after five years had elapsed from the expiration of that period, it was too late to institute proceedings to obtain a forfeiture, on account of omission to comply with such provision. The court will lay down no universal rule in such case, but will decide whether the delay has been unreasonable or not, from the circumstances of each case. "

*Swartwout* v. *Michigan Air Line R. R. Co.*, 24 Mich., 390; Note to the case of *Ottaquechee Woolen Co.* v. *Newton*, 21 Cent. Law Jour., 432; *People* v. *Williamsburgh, etc., Co.*, 47 N. Y., 586; *Briggs* v. *Cape Cod Ship Canal Co.*, 137 Mass., 71; In Re-application of B. E. R. R. Co., 135 N. Y., 435; Beach on Private Corp. p. 119, Sec. 59 and notes; Morawetz on Priv. Corp., Sec. 1029; Cook on Stock. and S., Sec. 636.

The act of 1892 provides in case of default that only

such parts of the railroad line as are not constructed shall be forfeited. Counsel for plaintiff claim that there is a distinction between the cases where the statute declares that the whole charter of a corporation shall be forfeited by the default, and the cases where the statute only declares that some particular privilege thereunder shall be forfeited. It follows that as a waiver of the forfeiture of the whole charter may be made, that a forfeiture of any particular privilege may also be waived. It also follows that as a forfeiture of a charter may be waived by the State, that until the State moves in the matter, and a forfeiture has been judicially declared, all of the rights granted by the charter continue to exist.

At the date of the passage of the act of March 8, 1894, authorizing the city to permit the construction and maintenance of a railroad on the streets, the defendant company was a corporation having capacity to accept and hold the franchise granted by said city to it on the 18th day of March of that year. The rights granted by that franchise were within the scope of its purposes and articles of incorporation. The only limitation placed upon the authority of the city in granting such franchises, was that the privilege should not be granted for more than fifty years. The terms and conditions were left solely to the discretion of the mayor and city council.

The forfeiting provisions or the acts hereinbefore quoted have no application to said franchise, because it was granted sixteen years after the period of forfeiture fixed in the first provision quoted had expired, and twelve years after the expiration fixed in the others, the time for the forfeiture to occur by the first provision, in case of default, being six years after the filing of the original articles of incorporation, and by the other provisions, ten years after such filing.

In 1897, the State legislature amended the section of the statute relating to forfeitures of railroad franchises by striking out the word "original," before the words "articles of association" (Laws of 1897, p. 237). As so amended it is contained in the Revised Statutes, Sec. 438. The act of 1897, in which said amendment was made, did not go into effect until January 1, 1898, about four years after the passage of the ordinance granting to the defendant company the privilege of constructing a street railway on South Temple Street, east of E Street.

It has already been shown that previous to the amendment striking out the word "original," that none of the provisions of the statutes applied to the franchise of the defendant company granted by said ordinance. It therefore follows that there is no statutory provision under which the said franchise of defendant can be forfeited for the defaults complained of in this case, unless Sec. 438 of the Revised Statutes applies. It does not for the following reasons: First. The act of the legislature authorizing the city to grant said franchise to said defendant imposes no restriction, except that the privilege of constructing and operating a railroad on the streets shall not be granted for more than fifty years. Section 2 of the resolution of February, 1889, re-enacted by said ordinance, provides "that this franchise is granted for the term of twenty years from the date of the passage of this resolution, and accepted on the following conditions, namely: That if the grantee, its successor and assigns, shall fail to perform all the stipulations of this resolutions, the city council, after sixty days' notice, and on failure on the part of said company to provide a remedy or make satisfactory arrangements therefor, may, by a two-thirds vote, declare the privileges herein granted forfeited, and proceed to take possession of the road bed, and control the same as if this resolution had not been passed."

This provision, which was amended by said ordinance so as to extend the time to fifty years, is a part of the contract formed by the granting and acceptance of said franchise, and is as binding upon the parties as any other stipulation of the same. None of the rights granted by said franchise can be forfeited except for the causes and in the mode prescribed in said section, because the statutory grounds of forfeiture have no application. To permit a forfeiture for any of the causes urged by the plaintiff would be to impair the obligation of the contract which the State authorized to be made, and which the city, in pursuance of that authority, entered into with said defendant.

Second: From the terms of said section, and the provisions of the statute permitting the amendment of the articles of association by "adding new lines of route, altering the original route, and changing the termini," of the railroad, it is clear that said section was not intended to apply to the lines of route so added or changed.

The time in which the articles of incorporation may be amended is not limited. This may be done more than ten years after the articles are filed, and after the lines of railroad embraced in such articles are fully completed, and all of the other conditions of said section are complied with.

In the case at bar, the last amendment of the said defendant's articles of incorporation, and which embraces all of South Temple Street, east of E Street, was made in 1889, seventeen years after the original articles were filed. Under such a state of facts said section can have no application. If it could be applied to the amended articles, and any other application is inconceivable, then the defendant company is not in default, because ten years had not expired before they commenced

19 UTAH—5

to construct said line, and were stopped by the injunction of the lower court.

Plaintiff's counsel claim that the defendant is estopped from constructing its railroad on said portion of said street by reason of certain facts, alleged by them, but which defendants deny. The lower court, upon this issue, found for the defendants.

We are of the opinion that the court was warranted by the evidence, in so finding.

This disposes of the question of estoppel, and renders its further consideration unnecessary.

It is ordered that the decree of the lower court be affirmed, with costs.

BARTCH, C. J., and MINER, J., concur.