20038.   ATLANTIC COAST LINE RAILROAD CO. *v.* SOUTHERN RAILWAY CO.

ARGUED APRIL 14, 1958—DECIDED MAY 7, 1958—REHEARING DENIED JUNE 4, 1958.

*Gowen, Conyers, Fendig & Dickey, Chris B. Conyers, Chas. L. Gowen,* for plaintiff in error.

*Bennett, Gilbert, Gilbert & Whittle, Charles J. Bloch,* contra.

ALMAND, Justice.   The judgment under review is one sustaining a general demurrer to an equitable petition, wherein Atlantic Coast Line Railroad Company sought a temporary and permanent injunction against Southern Railway Company.

The allegations of the amended petition set forth the following case.   Atlantic Coast Line Railroad Company (hereinafter referred to as "Atlantic") and Southern Railway Company (hereinafter referred to as "Southern"), are common carriers of passengers and freight by railroad.   Both maintain railroad

tracks in Cochran Avenue in the City of Brunswick under grants of easements, or rights-of-way in this public street,. from the City of Brunswick, the railroad track of Southern being parallel to and lying immediately west of the track of Atlantic. Atlantic is a successor in title to Brunswick & Birmingham Railroad Company, which acquired a right-of-way 20 feet wide in Cochran Avenue for the term of 99 years in 1901, under a franchise ordinance granted by the City of Brunswick. Atlantic and its predecessors in title have had public, continuous, exclusive, uninterrupted, and peaceful possession of the 20-foot right-of-way in Cochran Avenue from 1904 until the present time, maintaining and operating its trains over the track located on the right-of-way. On December 18, 1957, the Commissioners of the City of Brunswick enacted an ordinance granting to Southern authority and permission "insofar as the City of Brunswick is concerned" to cross at grade with its track, rails, and ties, the right-of-way, track, and rails of Atlantic, it being recited in the ordinance that Georgia Industrial Realty Company, a. landowning corporate affiliate of Southern, had acquired certain properties for industrial development, and that railroad facilities to and from such properties were essential to the successful development of such property for industrial purposes, and it having been determined that the development of the particular property will advance the public interest of the community. On the day the ordinance was passed, Southern attempted to cut the track of Atlantic to install a crossing over the same. Southern has not obtained the permission of Atlantic to cross its track, either by contract or through condemnation proceedings.

Atlantic further alleges: "If defendant should cut petitioner's track and install another track crossing it, it will be necessary under Section 94-510 of the Code of Georgia for petitioner to bring all of its trains using its said main line track to a full stop within fifty feet of the place of crossing. Six to eight freight trains of plaintiff daily use the track at the point where defendant proposes to install such crossing with as many as eighty to ninety cars to a train. When such freight trains are stopped, the brakes automatically are set on each car and it requires three to five minutes to release the brakes in order to

again commence movement. In addition to such delay, Section 31.11 of the Code of the City of Brunswick prohibits the blocking of any streets of the city by operation of trains for more than five minutes. The installation of such crossing would require southbond trains of plaintiff to block the Third Street and the Fourth Street crossings in the City of Brunswick for more than five minutes, and the northbound trains would block the 'O' Street, 'P' Street, 'Q' Street and 'R' Street and First Street crossings for more than five minutes. Such stops would in the course of a day's operation over plaintiff's track at said point necessitate the loss of thirty minutes to an hour each day of the train crew who are all paid at an hourly basis at a rate in excess of $2.00 per hour per trainman. During the time such trains are so stopped, the locomotive will continue to consume fuel to plaintiff's loss, since such fuel would not have been consumed if the train continued in motion." Southern has informed Atlantic of its intention to proceed with the cross-over track installation, and will do so unless enjoined.

■ Southern insists that Atlantic has no standing in a court of equity for the reason that the only right which it has to maintain a railroad track in Cochran Avenue is as a transferee of the right-of-way granted in 1901 by the City of Brunswick to its predecessor, Brunswick & Birmingham Railroad Company; and one of the conditions of the ordinance granting the franchise was that "the rights, privileges and franchises hereby granted to said railroad company shall not be transferable or assignable to any other company or corporation or person without the consent of the mayor and council of said city, evidenced by a duly enacted ordinance"; and since it does not appear that the City of Brunswick has given its consent by a duly enacted ordinance to the transfer and assignment, Atlantic has no right to maintain its railroad in said street.

The non-assignability of the franchise is a condition subsequent and there is no self-operating provision for a forfeiture for failure to comply with the condition as to obtaining the consent of the City of Brunswick to a transfer of the lease. Atlantic has the right to continue to exercise its rights under the franchise ordinance until a forfeiture has been declared in a proper pro-

ceeding. Hagerla *v.* Mississippi River Power Co., 202 Fed. 776, 782; Dern *v.* Salt Lake City Railway Co., 19 Utah 46 (56 Pac. 556); Knight *v.* Kansas City, St. Joseph &c. R. Co., 70 Mo. 231. As a general rule, no one, other than the State or its political subdivisions which grant a franchise, can assail the validity of such franchise or the right to exercise rights thereunder, especially in a collateral proceeding. Truckee & Tahoe Turnpike Road Co. *v.* Campbell, 44 Calif. 89; Joliet Gas Light Co. *v.* Sutherland, 68 Ill. App. 230; Franklin Trust Co. *v.* Peninsular Pure Water Co., 161 Fed. 855. The proper party to assert the forfeiture of Atlantic's franchise would be the City of Brunswick. *Mayor &c. of Macon* v. *East Tennessee &c. Ry. Co.*, 82 *Ga.* 501 (9 S. E. 1127). Southern is not a party that can claim that Atlantic has forfeited its right to maintain its track in Cochran Avenue under the franchise ordinance of 1901.

It is next contended by Southern that the City of Brunswick had the right under section 24 of its charter (Ga. L. 1889, p. 1030) to permit Southern to cross the track of Atlantic without getting the consent of Atlantic and without paying it compensation. This section of the charter declares that all streets as then laid out are vested in fee simple in the City of Brunswick, and "no privilege heretofore granted by the Mayor and Council of said city, or which may be hereafter granted, to any railroad corporation to construct or maintain railways in, on or through any of the streets or commons of said city, shall ever be construed as giving to such corporation an exclusive or perpetual privilege of maintaining such railways in said city; and the said Mayor and Council shall supervise, regulate and control, wholly and absolutely, all and every railway within the limits of said city, and shall alone determine through what streets, railways shall be carried, to what points they shall extend, what shall be the motive power used, and what shall be the rate of speed on the same; what shall be the width or gauge of said railways within the city, and all other conditions, limitations and restrictions that may be considered necessary to protect the interest of said city."

Though its charter gives the city broad and comprehensive powers as to the granting of rights and privileges to railroads

and the maintenance and operation of railways in the public streets, it does not empower the city, after it has granted rights-of-way to two railroads to maintain parallel tracks in the same street, to vest in one of the railroads the power or right to use the property of the other railroad without its consent or to interfere with its franchise rights. The City of Brunswick has granted Atlantic a franchise or right-of-way in Cochran Avenue. Such is a contract and creates property rights (Russell *v.* Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. ed. 912; *City of Summerville* v. *Georgia Power Co.*, 205 *Ga.* 843, 55 S. E. 2d 540); and Section 225 of its charter does not give the city the authority to vest Southern with the right to seize or use Atlantic's property without its consent. Under certain circumstances and conditions, a municipality may, acting under its police power for the general welfare of the public, take or use the property of a person or corporation without paying compensation therefor, but we know of no circumstance or condition that would allow a municipality to permit one public utility to possess or use the property of another public utility for its own purposes without getting the consent of or paying compensation to the latter. In *Macon Consolidated Street Railroad Co.* v. *Mayor &c. of Macon,* 112 *Ga.* 782(1) (38 S. E. 60), it was held that a municipality may require a railroad to relocate its track in a public street of the city at its own expense, and it was there said (p. 783): "The State has delegated to the City of Macon authority over its streets. It has a right under its charter to grant to a street-railway company authority to lay its tracks in these streets; but any such grant is necessarily subject to the power of the city to make any reasonable regulation of its use. 'A railroad company which secures the right to use the streets of a city takes such right subject to all reasonable regulations and ordinances enacted by the city in the exercise of its police power.' Elliott's Roads & Streets, § 807. See also Booth, St. Rwy. L. § 222. 'The power of a municipal corporation to make police regulations includes authority to make reasonable provision for the peace, safety and convenience of its inhabitants. Such regulations usually concern the use of streets, either by individuals or by corporations with railway cars.' 15 Am. & Eng. Enc. L.

(1st ed.) 1167. These principles are well settled, but it is equally settled that, having granted a railway company permission to lay its tracks in the streets, the municipal authorities can not prevent the successful enjoyment of the franchise. In cases, therefore, of municipal regulation of the manner in which a street-railway company may enjoy the privilege granted to it to use the streets, the question often arises as to whether the regulation is a legitimate exercise of the police power of the city, or whether it really amounts to an unwarranted interference with the franchise."

A municipality, under the guise of exercising its police power, cannot grant to one of two public utilities, occupying a public street under franchises from the municipality, the right to use the property or facilities of the other without its consent or without paying it compensation. Petition of Philadelphia, Morton & Swarthmore Street Ry. Co., 203 Pa. 354 (53 Atl. 191); Southern Ry. Co. v. Shealy, 18 Fed. 2d 784; Burlington Light & Power Co. v. City of Burlington, 93 Vt. 27 (106 Atl. 513); Sand Springs Railway Co. v. Oklahoma Union Ry. Co., (Okla.) 227 Pac. 430; Eastern Wisconsin Ry. &c. Co. v. Hackett, 135 Wis. 464 (115 N. W. 376).

Having disposed of the first and second lines of defense that Southern interposed by its demurrers to the right of Atlantic to equitable relief, we now come to the main battle line and primary defense of Southern, viz., that Southern can construct its track across the right-of-way and track of Atlantic in Cochran Avenue under the permission granted by the City of Brunswick without first either obtaining the consent of Atlantic or paying it compensation.

Under the statutes of this State and a prior full-bench decision of this court, we are of the opinion that this defense cannot be sustained. Under Code § 94-301 (5) and (6), Southern has the right to cross the right-of-way and track of Atlantic in Cochran Avenue subject to the limitations contained in Code § 94-308. These limitations provide in effect that, not having obtained the consent of Atlantic to cross its track and right-of-way, or having tendered just and reasonable compensation for the portion of the Atlantic right-of-way to be used in the

crossing, Southern cannot install its crossing without first condemning the same as provided for in Chapter 94-5 of the Code of Georgia. In *Georgia Midland & Gulf R. Co.* v. *Columbus Southern Ry. Co.,* 89 *Ga.* 205 (15 S. E. 305), it was held: 'Without first making compensation for the damages which will result therefrom, one railway company cannot lay and use its track across the track of another railway company located in a public street of a city. For this reason, if not also for others, it was error to deny the interlocutory injunction applied for." The facts in that case are in all material respects the same as in the instant case. There, Georgia Midland & Gulf Railroad Company and Columbus Southern Railway Company, under franchises granted by the City of Columbus, owned and maintained railroad tracks in a public street paralleling one another. The City of Columbus, by ordinance, granted Columbus Southern the right to construct a sidetrack or an extension from its main line in the street across the track and right-of-way of Georgia Midland. When, without the consent of Georgia Midland or first paying it compensation, Columbus Southern sought to lay its track across that of Georgia Midland, Georgia Midland brought its petition for an injunction. This court, in a headnote decision upholding the right of Georgia Midland to injunctive relief, cited three Illinois cases in support of its ruling, one being that of Chicago & Western Indiana R. Co. *v.* Chicago, St. Louis & Pittsburgh R. Co., 15 Ill. App. 587. This case holds: that, where a railroad lays its track in a city street with the permission of the city, it acquires an easement to use it for railroad purposes free from hindrance or molestation save such as is incident to the proper and ordinary use of the street by the public, and such easement will be as much protected from unlawful invasion as any other property right; that the construction of a railroad track by another railroad across the street and its track amounts to a taking of its property by the crossing railroad within the meaning of the Constitution, and the easement holder is entitled to have such construction enjoined until compensation is paid. The ruling in *Georgia Midland & Gulf R. Co.* v. *Columbus Southern Ry. Co.,* 89 *Ga.* 205, supra, is supported by the overwhelming weight of authorities. See 3 Elliott on Railroads (3rd

ed.), §§ 1595, 1605, 1606; 12 McQuillin on Municipal Corporations (3rd ed.), p. 235, § 34.70; Brooklyn Central R. Co. *v.* Brooklyn City R. Co., 32 Barb. (N. Y.) 358; Texarkana & Ft. Smith Ry. Co. *v.* Texas & New Orleans R. Co., 28 Tex. Civ. App. 551 (67 S. W. 525) ; Fidelity Trust &c. Co. *v.* Mobile Street Ry. Co., 53 Fed. 687; Townsend *v.* Michigan Central R. Co., 101 Fed. 757; State *v.* Department of Public Works of Washington, 155 Wash. 665 (286 Pac. 39) ; New Jersey, Indiana &c. R. Co. *v.* New York Central R. Co., 89 Ind. App. 205 (146 N. E. 111).

The rule as to the conflicting rights of two public utilities occupying the same street of a municipality with the permission of the corporate authority, where one utility attempts to use the right-of-way of the other, is well stated in Northwestern Telephone Exchange Co. *v.* Twin City Telephone Co., 89 Minn. 495 (95 N. W. 460): "As between two corporations exercising similar franchises upon the same street, priority, though it does not create monopoly, carries superiority rights, and equity will adjust conflicting interests, as far as possible, controlling them, so that each company may exercise its own franchise as fully as is compatible with the necessary rights of another's. But, where interference is unavoidable, the later occupant must give way. Edison *v.* Merchants, 200 Pa. St. 209, 49 Atl. 766; Paris *v.* Southwestern (Tex. Civ. App.) 27 S. W. 902; Bell *v.* Belleville, 12 Ont. 571." See also Rutland Electric Light Co. *v.* Marble City Electric Light Co., 65 Vt. 377 (26 Atl. 635, 20 L. R. A. 821, 396 Am. St. R. 868).

The fact that the charter of the City of Columbus did not contain a similar provision as did the Brunswick charter, set out in division 3 of this opinion, or that the City of Brunswick owned the fee in Cochran Avenue, does not distinguish the *Georgia Midland* case from the instant one.

In *Southern Ry. Co.* v. *Atlanta Ry. &c. Co.*, 111 *Ga.* 679 (36 S. E. 873, 51 L. R. A. 125), this court in a full-bench decision held that a railroad company whose track crossed a public street in the City of Atlanta could not compel a street railway, acting under permission of the city, to compensate it before laying its track across the track of the railroad where it crossed

the public street. The court cited the *Georgia Midland* case, and sought to distinguish it in the following words (p. 691): "It will be seen from the facts in that case that it was a contest between two commercial railway companies, and the City of Columbus constituted a terminus of each of these lines of railway. It was complained in the case that the petitioner constructed its depot, round-houses, etc., on the depot grounds. The lands for terminals of defendant, with its depot-site, side-tracks, etc., lay east of petitioner's property, and it was entirely unnecessary for it, in order to make its proper connections, to construct a side track just north of petitioner's depot grounds at a point where was located the travel and entrance to petitioner's grounds, thus unnecessarily increasing damage, delay, hindrance, inconvenience, and risk of accidents to the plaintiff at a point where its traffic of every sort passed. It will thus be seen that there is no analogy whatever between that case and the present one, where the defendant's roads, under grant of authority from proper sources, are running their lines along the streets and public highways for the benefit of the public itself." Whether the ruling is sound or the distinction sought to be made between the two cases is valid need not be decided, for the reason that this case is controlled by the ruling in *Georgia Midland & Gulf R. Co.* v. *Columbus Southern Ry. Co.*, 89 *Ga.* 205, supra, it being the older case.

We have considered the cases of *Cleveland* v. *City Council of Augusta*, 102 *Ga.* 233 (29 S. E. 584, 43 L. R. A. 638), and *City of Macon* v. *Southern Bell Telephone &c. Co.*, 89 *Ga. App.* 252 (79 S. E. 2d 265), which are relied upon by the defendant. Both of those cases were contests between municipalities and public-service companies which occupied public streets of a city under a franchise or license from the municipalities, and involve the right of the municipality to require the utility to change or remove its facilities in the streets at its own expense. These cases are not applicable here.

The amended petition stated a cause of action for the relief sought, and it was error to sustain the demurrers of the defendant and to dismiss the petition for injunction.

*Judgment reversed. All the Justices concur. Duckworth, C. J., concurs in the judgment, but not in all that is said in the opinion.*